## The Philadelphia Mercantile Loan Association *versus* Moore.

*Appropriation of payments by member of loan association.*

1. A member of a loan association gave bond for a loan and the payment of instalments on four shares of stock, and thereupon assigned all the shares he had as collateral security therefor: and on obtaining a second loan on two more shares made a second assignment of all his stock, as collateral: Held that, he could not afterwards apply the instalments paid upon the stock, to the first loan, which had been secured by judgment, if before obtaining the second, he had made no such appropriation of them.

2. As the first assignment, as collateral, was not a discharge of the loan to the extent of the instalments paid; and the second was an election by defendant not to treat the first, as a partial payment of the first bond, but to pledge all the stock as a living security for the payment of the second: *Held,* that the payments on the stock should be applied to the second bond and not to the first, against the consent of the association, except to the extent of what might remain after the second was paid.

ERROR to the District Court of *Philadelphia.*

This was an action on a bond by The Philadelphia Mercantile Loan and Building Association against John Moore. There was a warrant of attorney with the bond, under which judgment was entered November 15th 1859, but it was opened to let the defendant into a defence, after which the pleas of *non est factum,* set-off, and payment with leave were entered.

The case was this:—Defendant was the owner of eight shares of the capital stock of the association, for which a certificate was issued to him in the following words and figures:—

" No. 314.                    Philadelphia, June 1st 1854.
" Capital stock, 2500 shares.
    "Philadelphia Mercantile Loan and Building Association.
            " Chartered 24th December 1854.
    " This is to certify that John Moore is entitled to eight shares of the capital stock of the Philadelphia Mercantile Loan and
                            Building Association, subject to all pay-
[Each share $200.]      ments now due or to become due thereon.
                        Transferrable only on the books of the said
association in person or by attorney.

" In testimony whereof the president and secretary have attached their signatures, and caused the seal of the corporation to be affixed.

[SEAL.]                      " P. A. KEYSER, *President.*
                             " JAMES LYND, *Secretary."*

On these shares of said stock defendant procured a loan of $800, giving therefor his bond, dated May 8th 1858, in the sum of $1600, conditioned for the payment of $800, such as above

[Philadelphia Mercantile Loan Association *v.* Moore.]

said, at any time within one year from the date thereof, together with lawful interest for the same, payable monthly on the second Saturday of each and every month thereafter, and for the payment of the sum of four dollars on the second Saturday of each and every month thereafter, as and for the monthly contribution on four shares of the capital stock of the Philadelphia Mercantile Loan and Building Association aforesaid, now owned by the said John Moore, without any fraud or further delay. He received as net proceeds of said loan, $534, and executed and delivered the following assignment :—

"June 4th 1858. I hereby assign to the Philadelphia Mercantile Loan and Building Association, all my eight shares of the stock of the said association as collateral security for a loan to me from said association of $800.

"Witness my hand and seal,    JOHN MOORE.    [SEAL.]
"Attest, JAMES LYND."

On the 8th of October 1859, defendant applied for a second loan, gave his bond of the same date in the sum of $400, and executed the following assignment of said eight shares of stock :

"November 16th 1859. I hereby assign my eight shares of stock as collateral security for the payment of my bond, dated October 8th 1859, for the sum of $400, to the Philadelphia Mercantile Loan and Building Association : said stock is the stock of the said the Philadelphia Mercantile Loan and Building Association, per certificate No. 314.

"Witness my hand and seal,    JOHN MOORE.    [SEAL.]
"Attest, JAMES LYND."

Before consummating the second loan, to wit, November 15th 1859, the plaintiff entered up judgment on the first bond so as to increase their security for their first loan by a lien upon certain real estate belonging to defendant, under which his real estate was sold by the sheriff.

May 28th 1862. The sale of said real estate was set aside, the judgment opened, and defendant let into defence as above stated.

The payments made from time to time on account of said eight shares of stock amounted (October 15th 1858) to $479.60, inclusive of $19.85 fines. The only payment made after that date was $242, which were paid out of the proceeds of the second loan. The total payments were inadequate to the liquidation of both loans.

The following are the provisions of the charter relating to the points involved in the specifications of error :—

"ARTICLE II.—*Stock.*

"*Section* 1. The number of shares of stock to be issued by this

[Philadelphia Mercantile Loan Association v. Moore.]

corporation shall not exceed two thousand five hundred, and the value of each share shall not exceed $200.

"*Section* 3. Every stockholder, for every share of stock that he or she holds in this association, shall pay the sum of one dollar monthly, on a day to be fixed by the by-laws of this association, until the sum of said payments shall be sufficient to divide to each share of stock the sum of $200, or such sum as the holder of said share shall receive as an equivalent therefor.

## " ARTICLE V.—*Loans.*

"*Section* 1. Every stockholder, for every share of stock that he or she may hold in the association, shall be entitled to receive from the funds thereof a loan of $200, or such sum as he may agree to receive as an equivalent thereto. Every loan must be secured by real estate or the stock of the association : *Provided, however,* That other security may be taken for temporary loans, where two-thirds of the entire board of directors approve of the same."

The allegation was, that the first loan was on four and the second on two shares of the stock held by the defendant. On the trial the defendant offered to prove the amount paid on the eight shares of stock, which was allowed by the court under exception.

The plaintiff requested the court to instruct the jury,

1. That all payments made on the four shares of stock not borrowed on, are merely payments on collaterals and not payments on account of the bond.

2. That the second assignment of the stock not being expressed to be subject to the first assignment, entitles the said assignee to exhaust the entire eight shares in the payment of the second loan.

3. If the defendant can claim to have payments on his stock credited as payment of the first bond, it is only the payments on the four shares actually borrowed on at the first loan.

4. That the amount of the second bond ($400 with interest from October 8th 1859) must be first taken out of the amounts shown to have been paid in by defendant on his eight shares, the balance only with the payments of interest can be applied to the first bond.

The court below charged as follows :—" I have been requested by plaintiffs to charge you upon certain points which they submitted. I decline to affirm them.

" As there is no evidence of appropriation by either party, but there was a special pledge of the stock to the payment of the first bond, before the second bond was given, the payments are to be applied to the payment of the first bond in the first

place, and until it is paid principal and interest;" which was the error assigned, after a verdict and judgment for defendant.

*Amos Briggs* and *James Lynd,* for plaintiffs in error.—The plaintiffs' objection to the defendant's offer "to prove the payments made on account of stock transferred as collateral security" should have been sustained.

The general doctrine is that payments on account of a collateral security are not payments on account of the debt: Lord *v.* Ocean Bank, 8 Harris 386 ; Kittera's Estate, 5 Id. 424.

It is said that the plaintiffs are a building association, and that, under the decisions of the Supreme Court, the payments on account of the stock borrowed on are payments on account of the loan. The condition of the bond, as well as the amount of the loan, shows that but four shares were borrowed on.

This court has never held that payments on account of stock not borrowed upon, though belonging to the borrower, are payments on account of a loan based upon other stock actually borrowed upon.

The four shares of stock not borrowed upon were certainly subject to the ordinary doctrine of collaterals.

But it is said that the payments were made to the plaintiffs themselves. Did that alter the absolute title to or ownership of the stock ? The second assignment is not subject to the first— it places anew the entire eight shares of stock in the control of the plaintiffs to secure the new loan.

Is it consistent with equity or good faith that defendant should wrest this stock from them, and applying all its proceeds to the first debt, leave the latter one unpaid ?

This second assignment even estops him from applying the payments, made on account of the four shares actually borrowed upon at the first loan, to the liquidation thereof, until after this second loan is paid.

Payments on account of stock borrowed on may be set off against the loan at the debtor's option—they are not *ipso facto* payments : Building Association *v.* Sutton, 11 Casey 463. And if the debtor has made any arrangement inconsistent with such option, he is clearly estopped from the exercise of it : Kelly *v.* The Building Association, 3 Wright 153 ; Schober *v.* Building Association, 11 Casey 223.

By the second assignment, plaintiffs acquired a new and distinct possession of the stock, and defendant could not demand it for any purpose whatever, without paying the second bond : Kittera's Estate, 5 Harris 424. The learned judge entirely ignored the second assignment, which, we think, supersedes the first, at least until the second debt is fully paid. Should this not be its effect, it certainly operates to enable us to apply the

doctrine of appropriation to the payments that were made after the date of the second loan.

Our first debt was secured by judgment—our second was unsecured. If the payments on account of the eight shares of stock are to be treated as payments on account of the loans made on them, then "in the absence of any appropriation by the parties, the law appropriates the payments to the less secured debt:" Watt v. Hoch, 1 Casey 411; Schuylkill County v. Commonwealth, 12 Id. 534; Johnson's Appeal, 1 Wright 268.

*Edward S. Campbell*, for defendant in error.—The contract, in this case, having been made prior to the Act of 12th April 1859, is to be governed by the law as it stood at that time, and the amount of the payments by defendant to plaintiff being amply sufficient to pay the first bond with interest and costs, and a part of the second, discharges the first bond entirely. Because, at the time defendant received the first loan, he made a special pledge of "all his (my) eight shares of the stock of the association as collateral security for the loan;" and this was the only security given, for that judgment was not obtained on the bond by entry of the warrant of attorney annexed, until nearly six months afterwards.

So far from payments on account of a collateral security not being payments on account of the debt, the law is just the reverse: Mann v. McDonald, 10 Watts 273; Kupfert v. Building Association, 2 Casey 465; Hughes's Appeal, Id. 471.

The cases cited by plaintiff in error in 8 Harris 386, and 5 Id. 424, do not touch this point.

The fact is undoubted that all the eight shares of stock were assigned by the first assignment. Plaintiffs were not required to give up the stock or to reassign it, but only to place payments made on account of the stock *pro tanto*, to the liquidation of the first bond. They are still to retain the stock, applying the payment beyond the amount of the first bond to the liquidation of the second. Defendant, in addition to the second assignment, did not specially acknowledge, after giving of the second bond, that the payments made on the stock were not on account of the first bond, as in 3 Wright 153. Nor was there here an assignment of the stock absolutely away to the third party for a debt foreign to the purposes of a building association, as in 11 Casey 232.

All the stock was specially pledged for the first bond without reservation, and the second assignment being between the same parties for a further loan, and on the same security as the first, was necessarily subject thereto. There being no evidence whatever to show any appropriation of the payment on the stock, the rule of law is that the debt first contracted must be the first

paid: Speck *v.* The Commonwealth, 3 W. & S. 328; Berghaus *v.* Alter, 9 Watts 394; Pierce *v.* Sweet, 9 Casey 157.

The opinion of the court was delivered by

STRONG, J.—The first bond, dated May 8th, 1858, was conditioned for the payment of $800, with interest, in one year from its date, and also for the payment of four dollar monthly instalments upon four shares held by Moore in the capital stock of the association. On the 4th of June 1858, less than a month after the bond was given, the debtor assigned to the company as collateral security for the loan, these four shares of stock together with four others which he then held. There had at that time been paid upon them about $440, the monthly instalments from June 1st, 1854, when the certificate was issued to him. Of course the assignment of the stock as collateral, was not a discharge of the loan to the extent of the instalments paid. The declaration that it was given as collateral negatives this. Besides, no part of the bond, either principal or interest, was then payable. It is true, the debtor might have appropriated the sum of the instalments paid to the discharge of the debt, but he did not. On the contrary, when on the 8th of Oct. 1859, he borrowed from the plaintiffs an additional sum of $400, and made another assignment of the same stock as collateral security for the repayment of the second loan, he elected not to treat the first assignment as a partial payment of the first bond, and pledged the stock as a living security for the payment of the second. It is true, that without the consent of the company he could not pledge it for the payment of a second debt, until that for which it was first pledged had been paid. But when the company assented, as they did, by receiving it as a collateral for the security of the second loan, he had no longer any right to insist that it should be applied to the discharge of the first. It is to be remembered that neither assignment amounted in itself to a payment of the debt for which it was pledged as security; 11 Casey 463. The same thing has been ruled this winter in Loan Association *v.* Saving Fund. The case, then, is this: the debtor made no application of the instalments paid on the stock when he assigned it as a security for the first loan. He made none afterwards, and before the second loan was made. By the second assignment he disabled himself from insisting that the payment should be applied to the reduction of the first bond, and put in the power of the creditors to use the stock for the satisfaction of either debt at their option. It is not, therefore, to be treated as a payment made by a debtor owing two debts, of which neither he nor the creditor has made any application, and which the law will therefore apply. It was in reliance on the second assignment that the second loan was made. If the debtor may now destroy the value of the security by insisting

that the instalments paid shall go to the discharge of the first debt, he is enabled to work a fraud. Had he, on the 16th of October 1859, assigned the stock to any other than the plaintiffs, he could not claim a credit for its value upon the first debt. This was ruled in Shober v. The Accommodation Saving Fund and Building Association, 11 Casey 223, and the reason is that the assignment would have been another appropriation. The supposed case does not differ in principle from the present. It follows that the court erred in directing the jury to apply the payments made on the stock to the discharge of the first bond. Against the consent of the creditor such an application can be made only to the extent of what may remain after the second bond is paid.

Judgment reversed, and a *venire de novo* awarded.

WOODWARD, C. J., was absent at Nisi Prius when this case was argued.