IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1879.

## Link *versus* Germantown Building Association.

1. An unincorporated building association is not entitled, by the Act of April 12th 1859, to recover upon its mortgages more money than was actually advanced to its stockholders, with legal interest thereon.

2. Where there has been no appropriation by such association or the stockholders of the payments on the stock to the mortgage, such payments cannot be lawfully set up as payments on the mortgage; they do not *ipso facto* work a *pro tanto* extinguishment of the mortgage, and the purchaser at a sheriff's sale of the mortgaged premises cannot be allowed to set them off against the association in a suit on the mortgage.

3. The interest paid by the mortgagor, while a member of the association, is to be credited to the interest which has accrued on the sums actually loaned, to secure which the mortgage was executed.

4. The terre-tenant who purchased the mortgaged premises at sheriff's sale and was allowed to defend against the claim of the association on the mortgage, is entitled to take defence as to the consideration of the mortgage and to show that it was unlawful to the amount of the premiums, and to that extent not a valid charge against the land.

January 23d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county*: Of January Term 1879, Nos. 58 and 59.

These were two writs of scire facias sur mortgage, issued by Joseph Handsberry, treasurer of the Germantown Building Association, against Christian Pfeiffer and Frederick Schauffele, and John Link, terre-tenant, admitted to defend.

The pleas filed were non-assumpsit, payment, set-off, with leave

(15)

to give in evidence the special matter set forth in the affidavit of defence of John Link, terre-tenant.

The affidavit of Link set forth that deponent was the purchaser at sheriff's sale of the mortgaged premises; that the mortgagee was the treasurer of the building association; that said association, being unincorporated, had made two loans to Pfeiffer and Schauffele, both loans nominally in the sum of $3000, and secured by mortgages upon the premises bought by defendant; that the said mortgagee only paid the said mortgagors the sum of $2760, and said mortgagors have repaid to said mortgagee the sum of $1108.50, upon the principal of said mortgage, and have besides paid a large amount of money in usurious interest, having paid interest at the rate of six per cent. per annum upon $3000, instead of· upon the sum of $2760, the actual amount of the said mortgage; that, according to deponent's calculation, there is only due said mortgagee the sum of $1631.10; that the plaintiff, not having been incorporated, cannot be recognised as a building association under the law; that as such unincorporated association, it can only recover the amount actually loaned, with legal interest thereon, after giving credit for all amounts paid in by the mortgagors; that said association is not entitled to the stock and loan privileges of building associations incorporated under the Act of 1859; that deponent is willing to pay said $1631.10, or such amount as can lawfully be claimed on said mortgages.

The jury returned a special verdict, which set forth that plaintiff was an unincorporated association; that on January 15th 1873 and January 23d 1873, respectively, Pfeiffer and Schauffele executed a bond and mortgage to plaintiff for $3000, payable in one year, interest payable monthly; that on the first mortgage they received a loan of $2760 and on the second $2690; that as additional security for said loans, Pfeiffer and Schauffele transferred on January 30th 1873 to the plaintiff sixty shares of stock of the association, which they owned and on which they had paid $1348.

Pfeiffer and Schauffele made payments on the stock, and also on account of interest on the mortgage, until May 18th 1875. On July 17th 1875, attachments in execution against Christian Pfeiffer, to the amount of $1500 and $2000, or $3500 in all, were served upon the treasurer of the association.

On July 31st 1875, Christian Pfeiffer gave the secretary of the association written notice that he had assigned his interest in the sixty shares of stock to *Martin* Link, who was *not* the terre-tenant and plaintiff in error.

On November 5th 1875, another attachment against Christian Pfeiffer was served, for $376.07. On January 25th 1876, two more attachments were served, for $1188.36 and $326.07, against Christian Pfeiffer. And on January 28th 1876, an attachment against Christian Pfeiffer and F. Schauffele, for $367.33, was served.

[Link *v.* Germantown Building Association.]

On December 24th 1875, the sheriff conveyed the mortgaged premises to *John Link*, he having bought them at the sheriff's sale on December 6th 1875, on a judgment against Pfeiffer and Schauffele. At this sale notice was given that the purchaser would take the property subject to this mortgage.

On February 4th 1876, the sci. fa. was sued out, and served on Pfeiffer and Schauffele, who appeared by separate counsel. They filed no affidavit of defence. John Link filed an affidavit, claiming credit for all the stock and payments made by the defendants.

The case was put at issue as to Schauffele and Link. It does not seem to have been at issue as to Pfeiffer. The defendants took no part in the defence. John Link was admitted to defend. He claimed as in his affidavit.

Upon this special verdict judgment was entered by the court, November 6th 1878, in favor of plaintiff, for $3496.51, with interest from October 25th 1878. Subsequently judgment was entered on the verdict, in accordance with the following opinion of Allison, P. J. :—

" Any one who has occasion to examine critically the decisions of the Supreme Court on the subject of building association loans, will be very likely to agree with the remark of Mr. Justice SHARSWOOD, in Jarrett *v.* Cope, 18 P. F. Smith 70, where he says : 'I am afraid I do not understand them all.' One point may, however, be considered as clearly settled, that prior to the Act of April 12th 1859, building associations, corporate or incorporate, could recover on their mortgage loans only the sum actually loaned, with legal interest.

" Jarrett *v.* Cope, decided in 1871, re-affirms the doctrine of the earlier cases as to unincorporated associations, and that the Act of 1859, which declared that premiums taken for the preference or priority of loans should not be deemed usurious, did not apply to any association other than those incorporated under the Acts of 1859 and of April 22d 1850. Unincorporated associations are unaffected by this legislation, and are not within the saving provisions of either of the Acts of Assembly.

" The persistent effort on the part of the Supreme Court to protect the members of building associations against oppressive exactions in the form of loans and the legislation procured by the associations, to avoid the effect of the numerous decisions of the court upon the subject of usurious contracts extorted from the stockholders, are abundantly manifest by an examination of the decisions of the court extended through a number of years, and of the Acts of Assembly passed from time to time by the legislature, to validate loans of this character. It was held that neither of the Acts of April 22d 1850, or of May 8th 1855, or of May 8th 1857, authorized building associations to enforce the recovery of usury in usurious contracts of loan : Houser *v.* The Association, 5 Wright

8 NORRIS—2

[Link *v*. Germantown Building Association.]

478; Kupfert *v*. The Association, 6 Casey 465. A retroactive effect was also denied to the Act of April 12th 1859, so as to alter the rights of parties who had contracted loans with building associations prior to the passage of the act: Denny *v*. The W. P. Association, 3 Wright 154.

" The Act of 1859 was passed to render clear and certain that which previous legislation had failed to accomplish, and to remove all doubt as to the legality of contracts of loan made prior thereto, by companies incorporated under the Act of 1850, and which should thereafter be incorporated.

" It declares it to have been the true intent and meaning of the Act of 1850 to authorize the incorporation of companies, with power to loan to stockholders their accumulated moneys, and that the premiums taken by said companies for preference or priority of loans, should not be deemed usurious.

" But this act was held to be unconstitutional and void, in so far as it was intended to be expository, and that in suits for loans made prior to its passage no more can be recovered than the amount loaned, with legal interest : Reiser *v*. The William Tell Association, and Denny *v*. The W. P. Association, 3 Wright 137 and 154.

" In the case of Building Association *v*. Timmins, 3 Phila. R. 203, Judge Hare sums up tersely the general judgment of the Supreme Court, when he says : ' So far as I am able to understand the view taken by the Supreme Court of building associations, it would seem to be that they are, in point of fact or of law, schemes for avoiding the statutes against usury, and that all payments made under their constitutions or by-laws, as instalments on stock, are consequently to be regarded as payments on account of loans made to their stockholders. Such undoubtedly was the effect of the decisions in which it was held that the payments on stock assigned as collateral security for a mortgage loan, interest and fines were to be credited as payments on the sum actually advanced to the borrower, and that usurious interest paid under such circumstances is not a voluntary payment in any such sense as to entitle the receiver to retain the sum paid above legal interest: Association *v*. Mc-Knight, 11 Casey 472. But in the case of The Association *v*. Sutton, 11 Casey 463, the court qualify the decisions in Guttenberg Association *v*. Kupfert, and Hughes's Appeal, 6 Casey 465 and 471, to the effect that payments on account of stock were to be regarded as payments on account of the loan, and hold that the doctrine of those cases was in advance of the general understanding, and was considered necessary to protect the borrowing community from the oppression and hardships imposed on them by money-lending associations. The most material point ruled in The Association *v*. Sutton is, that the former decisions are not to be regarded as laying down the rule that payment of dues on stock *ipso facto* works an extinguishment of so much of the mortgage. The debtor

may so apply it, but payment itself is not an application of the money to the reduction of the mortgage.　This was followed by the case of The S. G. Association v. The T. S. Association, 10 Wright 493, in which the same principle is affirmed, and The Association v. Sutton is recognised as having been well decided.

"An act of appropriation by either the lender or the borrower, is held to be necessary to effectuate application of payments on stock to the debt, and that strangers to the transaction stand on a different footing.　They can require nothing which the parties do not. The conclusion reached in the case in 10 Wright is, that there having been no appropriation by either party, the purchaser at sheriff's sale of the mortgaged premises could not compel an application of the collateral security to the reduction of the mortgage.

"This principle is, we think, as applicable to contracts of loan made with an unincorporated association, as it is to those which are incorporated under the laws of this Commonwealth.　It is the general doctrine of appropriation of payments, whether made as between individuals, or as between individuals and corporations, in all cases where the relation of debtor and creditor exists.　It by no means follows, as the terre-tenant in this case contends, that because unincorporated associations are not entitled to invoke in their behalf the saving clauses of the Act of 1859, in relation to the recovery of premiums on loans, as decided in Jarrett v. Cope, that the established rules of law, in cases where there is an indebtedness upon several distinct accounts, and payments are made by the debtor to his creditor, are not applicable.　No sufficient reason has been presented to induce us to adopt the view entertained by the terre-tenant, and to apply in this case the old doctrine overthrown by the decision in the Building Association v. Sutton.

"From the foregoing and other decisions of the Supreme Court, we conclude as applicable to the facts found by the special verdict in these cases :

1. That the Germantown Building Association, being an unincorporated association, is not entitled by the Act of April 12th 1859 to recover upon their mortgages more money than was actually advanced to the defendants, with legal interest thereon. The Act of 1859 is applicable to incorporated companies only. The law, as settled by repeated adjudications of the Supreme Court, denying the right to recover the amount allowed or paid as a premium for a loan, remains in full force as to all unincorporated building associations.

"2. There having been no appropriation by either party of the payments on the stock to the mortgage debt, such payments cannot be lawfully set up as payments on the mortgage ; they do not *ipso facto* work a *pro tanto* extinguishment of the mortgage, and that the purchaser at sheriff's sale cannot be allowed to set off plaintiff.

"3. The interest paid by the defendant while a member of the

[Link *v.* Germantown Building Association.]

association, is to be credited to the interest which has accrued on the sums actually loaned to the defendant, to secure which the mortgages were executed by them.

"4. The terre-tenant, John Link, who purchased at sheriff's sale under a junior judgment, having intervened and been allowed to defend against the claim of the plaintiff, is entitled to take defence as to the consideration of the mortgages, notwithstanding the fact found by the special verdict that at the ' sale notice was given of the mortgages sued on in this case.' The defence to the mortgages is that as to the excess actually advanced as a loan, they are without consideration. That if such excess or premium could not be recovered against the land in the hands of the mortgagors, why against the land in the possession of a terre-tenant? When one purchases under and subject to a mortgage debt, it is the debt which at the time is due. He ought to be allowed to show payments made upon the mortgage by the mortgagor, by which the mortgage is to that extent extinguished, or to show payment in full, or that the mortgage debt never existed, and that there is therefore no such lien to be enforced as against the land. For a like reason he ought to be allowed to show that the mortgage is in part or in whole fraudulent. The mortgages in these cases were unlawful to the amount of the premiums, and to that extent never were a valid charge against the land, having been given for a larger sum than the actual loan. When the purchase is under and subject to a bona fide debt secured by mortgage, the purchaser buys for a consideration of which the mortgage debt forms a part, but where the debt is not bona fide, or where it does not exist at all, he ought to be entitled to take defence to the claim.

"Where land is sold subject to a mortgage, it becomes the primary fund to pay the mortgage debt, but it is the debt of so much of it as is actually due. Hansell *v.* Lutz, 8 Harris 284, decides no more than this, where it says that the purchaser shall discharge the mortgage. Nor is Good *v.* Grant, 26 P. F. Smith 52, an authority against the conclusion reached on this point. The effort of the terre-tenant is not to recover back usury paid by the mortgagors. His defence rests on a partial failure of consideration, and to be allowed a credit for the interest paid as on the real instead of the nominal debt. Cooley's Appeal, 1 Grant 401, does no more than affirm the general principle of the liability of a purchaser at sheriff's sale of an estate encumbered by a prior mortgage to pay it off. That is, the mortgage or so much as is actually due upon it.

"We do not think it important to pass upon the question of the effect of the attachments of stock of defendants in the hands of the association, nor of the subsequent assignment by Pfeiffer of his interest in the stock.

"The amounts for which judgments are to be entered on the points reserved in favor of plaintiff can be settled by counsel."

[Link v. Germantown Building Association.]

The judgment entered in accordance with this opinion gave the terre-tenant credit on the mortgage for the premiums of $220, and the payments made for interest, but did not give him credit for the stock and the payments made on account of it. To this judgment Link took this writ of error.

*William H. Staake*, for plaintiffs in error.—The position of the defendants and terre-tenant was based upon the following propositions :—

1. The jury found that the mortgage was a building association mortgage, given as security for a stock loan, and that the building association was unincorporated.

2. That being unincorporated, the law applicable to building associations in existence, prior to the Act of April 12th 1859, should govern the court in construing the contract between the association and the defendants.

3. That under the law applicable to building associations, incorporated prior to the Act of 1859, the defendants, and even a purchaser at sheriff's sale, subject to a building association mortgage, would be entitled to credit for the value of the shares of stock assigned to the association as collateral security for the mortgage debt: Kupfert v. Guttenberg Building Association, 6 Casey 465 ; Bechtold v. Brehm, 2 Id. 269 ; Hughes's Appeal, 6 Id. 471 ; Schober v. Accommodation Loan Association, 11 Id. 223 ; Association v. McKnight, Id. 470 ; Reiser v. William Tell Association, 3 Wright 137 ; Kelly v. Perseverance Association, Id. 148 ; Denny v. West Philadelphia Building Association, Id. 154 ; Premium Fund Association's Appeal, Id. 156 ; Houser v. Association, 5 Id. 178 ; McGrath v. Association, 8 Id. 383 ; Everham v. Association, 11 Id. 352 ; Johnson v. Potomac Building Association, 14 Leg. Int. 393, 401 ; Kelly v. Association, 2 Phila. 237 ; Schnepf's Appeal, 11 Wright 37 ; Jarrett v. Cope, 18 P. F. Smith 71.

*George Junkin*, for defendant in error, relied upon the opinion of the court below and the authorities there cited, and in addition cited Kreamer v. Springfield Association, 6 W. N. C. 267.

The judgment of the Supreme Court was entered, February 17th 1879,

PER CURIAM.—These judgments are affirmed upon the opinion of the learned President Judge Allison in the court below.

Judgments affirmed.