Sullivan & Sons Manufacturing Company et al. *v.*
Ideal Building & Loan Association, Appellant.

Argued December 5, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*M. Jacob Markmann,* for appellant.

*H. Edgar Barnes,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, January 2, 1934:

Plaintiff below (appellee here) is the owner of 926 Sedgley Avenue in the City of Philadelphia, subject to a building association mortgage of $87,500 dated January 10, 1927, given to and still held by the defendant association. This indebtedness is also secured by a transfer, as collateral security, of 450 shares of defendant's stock in the 30th series. Each month since the series began in April, 1926, down to and including June, 1932, defendant had been paid the sum of $996.88, made up of $450 monthly dues on the stock, $437.50 monthly interest on the mortgage and $109.38 monthly premium on the loan. The total amount thus paid for dues alone then reached the aggregate of $33,750. On May 20, 1932, plaintiff wrote to defendant directing that the $33,750 (but not the amounts paid as interest and premium) should be "appropriated and applied as payments on account and in reduction of the said mortgage loan of $87,500." On June 16, 1932, defendant, through its counsel, notified plaintiff that it "declined to comply" with that direction.

Plaintiff thereupon, on July 5, 1932, filed a petition under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, asking the court to determine the rights of the parties on the issue which had thus arisen. An answer was filed by the defendant, and the court below, after a hearing, decreed in favor of plaintiff. From this defendant appealed. The decree must be affirmed.

But two questions are raised. The first is whether or not the dispute could properly be raised and decided under the Uniform Declaratory Judgments Act. Defendant alleges that there is not, between the parties, either "an actual controversy, or the ripening seeds of one," one or the other of which is always a requisite to a proceeding under the statute: Kariher's Petition (No. 1), 284 Pa. 455; Reese v. Adamson, 297 Pa. 13; Sterrett's Est., 300 Pa. 116. The legal principle is correctly stated, but, even when measured thereby, it would be difficult to

find a case to which the statute is more clearly applicable. Plaintiff claimed, as of right, to have the dues which had been paid appropriated in reduction of the mortgage loan, and this defendant refused to do. The proceeding is thus expressly brought within the purview of the statute, section 12 of which says (page 842): "This act is declared to be remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." Upon the point under consideration we said in Cryan's Est., 301 Pa. 386, 395: "If differences between the parties concerned, as to their legal rights, have reached the stage of antagonistic claims, which are being actively pressed on one side and opposed on the other, an actual controversy appears; where, however, the claims of the several parties in interest, while not having reached that active stage, are nevertheless present, and indicative of threatened litigation in the immediate future, which seems unavoidable, the ripening seeds of a controversy appear," and the statute can then be invoked. This expresses the true rule, and it determines the present point in favor of appellee.

The other question raised is as to whether appellee is entitled to have the amount paid in by it as dues (but not the amounts paid in as interest and premium) appropriated as payments on account of the mortgage debt? Admittedly the building association is solvent, and it is not denied that appellee has done everything it is required to do to entitle it to have the appropriation made, if it has the right to so require. Despite our repeated rulings that it has that right, we would now modify or reverse those decisions, if, by applying them, the other members of the association would be seriously injured, as appellant fears they would. As we will later show, however, this fear is unfounded.

Many cases decide that the right to make such an appropriation exists. As far back as 1860, we said in

North America Bldg. Assn. v. Sutton, 35 Pa. 463, 468, referring to our opinions in two earlier cases: "What was then said, however, is not to be regarded as laying down the rule that payment of dues on the stock, *ipso facto,* works an extinguishment of so much of the mortgage. The debtor may so apply it, but the payment itself is not an application of the money to the reduction of the mortgage." In Spring Garden Assn. v. Tradesmen's Loan Assn., 46 Pa. 493, 495, referring to the case last cited, we decided that "Payments to stock are not ipso facto payment to the mortgage debt or loan. It is true, according to former decisions, the mortgagor may apply his payments on the stock to the mortgage debt, *a license to do so being implied in the nature of these building loan transactions.* The building association may also so apply them by virtue of the terms of the assignment of the stock, which is taken as a collateral security [for the loan made by it]. But in order to effectuate application of payments on stock to the debt, it requires an act of appropriation by one or the other of the parties."

To the same effect are Phila. Mercantile Loan Assn. v. Moore, 47 Pa. 233, 238; Link v. Germantown Bldg. Assn., 89 Pa. 15, 18-19; Early & Lane's App., 89 Pa. 411, 414; Watkins v. Workingmen's Bldg. & Loan Assn., 97 Pa. 514; Kurtz v. Campbell, 218 Pa. 524; Orient Bldg. & Loan Assn. v. Freud, 298 Pa. 431, 436; Green et al. v. Second Allegheny Bldg. Assn., 311 Pa. 305, 307.

In Economy Bldg. Assn. v. Hungerbuehler, 93 Pa. 258, 262, we held that if an attachment is issued and served before the mortgagor directs an appropriation of the dues paid in on the stock to the mortgage loan, the attachment will defeat the right to make a future appropriation, and the attaching creditor's rights will be subject only to those of the building association by virtue of the prior assignment of the stock to it. So, also, we held in Egolf Bldg. & Loan Assn. v. Cleaver, 228 Pa. 60, and in York Trust, etc., Co. v. Gallatin, 186 Pa. 150. In the last of these cases, after referring to several of

the authorities above mentioned, we said, at page 158: "These and other cases that might be cited distinctly recognize the right of the debtor to direct appropriation of the payments on the stock to the extinguishment of the debt. His power to so direct before the intervention of the rights of creditors cannot be doubted. It is only where the rights of creditors attach, by assignment, as in the cases last cited, or by legal process, or insolvency, as in Strohen v. Franklin Saving & Loan Assn., 115 Pa. 273, that the debtor's right of appropriation is forfeited. Until thus forfeited, his right remains." Where, however, the appropriation is first made, the attaching creditor acquires no lien on the stock: Hemperley v. Tyson et al., 170 Pa. 385; Kurtz v. Campbell, supra.

Freemansburg Bldg. & Loan Assn. v. Watts, 199 Pa. 221, so greatly relied on by appellant, when viewed in connection with its facts, is not applicable here. On page 223, the rule as to the right to apply the payments in cases of solvency is expressly recognized, but it is further said: "The building association became insolvent, and made an assignment December 11, 1899. Neither prior to this last-mentioned date, *while the right of express appropriation existed in both,* nor since, was any notice given by either that these payments would be applied in any particular manner. As the insolvency of the association dissolved the ordinary contract relation of membership (Strohen v. Franklin Saving Fund & Loan Assn., 115 Pa. 273) the liability of a borrowing stockholder is measured by the usual rules enforced between creditor and debtor." Hence it was that we stated (page 229) that if we were to decide otherwise, *"in the case of the insolvency of the association,* we [would] have the rank injustice that the burden of the whole loss [would be] cast upon the nonborrowing members." That this decision does not affect the general rule is also shown by the numerous later cases, cited above, which reannounce that rule.

It is clear, therefore, that the court below correctly decided that plaintiff had the right to require that the dues paid by it should be credited on the mortgage loan. It was also correct in holding that such appropriation would not alter plaintiff's duty to continue paying each month the full sum of $996.88, just as theretofore it had done. The appropriation of the $33,750 of dues on account of the mortgage debt, would not in any way alter the requirements of payment as specified in the bond and mortgage or other obligation given by plaintiff to defendant; nor would it, in the case of a later insolvency, excuse plaintiff from sharing pro rata in the losses which occurred during the time of his membership: Strohen v. Franklin Saving & Loan Assn., supra. Plaintiff would still have to pay the same amount, as previously it had been paying, until the series, in which it had shares of stock, had fully matured. So, also, at maturity it would get, in either event, the $2,500 difference between the matured value of his 450 shares ($90,000) and his loan of $87,500, and no more. In either event, also, it could not get this sum or any part thereof until such maturity. If it defaulted in its payments, and foreclosure became necessary, it would be entitled to exactly the same credit on the mortgage debt, no matter when the appropriations were made, and, if required by plaintiff, they would have to be then made. The real benefit to both the parties, rests on the fact that settlement could at any time be effected between them, unhampered by the claims of outside creditors.

Appellant calls attention to the fact that in the bond and in the warrant of attorney, but not in the mortgage, it is provided: "And it is hereby further agreed that the obligee [the building association] shall have the right at any time, at its option, to appropriate, on account of the debt hereby secured, the withdrawal or cancellation value of the shares of the capital stock of the said association pledged as collateral security for the said debt; *but it shall not be obligatory on the part of the said*

*obligee to appropriate the said stock."* Appellant contends that under this provision, the appropriation required in this case cannot be made without its consent. It is clear, however, that the provision has no bearing upon the present question, except, perchance, to exclude and not to sustain appellant's contention: expressio unius est exclusio alterius. It refers only to "the withdrawal or cancellation value of the shares." This includes not only the amount paid in (which is the basis of the present contention), but also the profits allotted thereto, the two combined constituting "the withdrawal or cancellation value of the shares." Consequently, it cannot abrogate the borrower's right which, as already shown, is "implied in the nature of these building loan transactions." The evident purpose of the provision quoted, is to make clear the right of the building association, which had been theretofore challenged by outside creditors of the borrower, to credit or not to credit, at its option, "the withdrawal or cancellation value of the shares," when entering judgment against the borrower, by virtue of his bond and warrant of attorney.

Defendant finally argues that the Acts of June 12, 1931, P. L. 504, and the "Building and Loan Code" of May 5, 1933, P. L. 457, must be so construed as to give increased rights to the borrower, and hence show that appellee's present claim has no legal foundation, some such rights being given for the first time by those statutes. This contention itself wholly lacks a "legal foundation," but the subject need not be pursued further since they have no bearing on the present litigation. Neither statute is referred to in the pleadings, nor, so far as appears, were they ever brought to the attention of the court below. The first was repealed by the second, and the latter was not enacted until nearly two months after the final decree in this case. Indeed, they are rather restricting than enlarging of the rights of the shareholders, and may have the happy result of calming

appellant's fears, so far as concerns all loans made after the date of the Act of 1933.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.