Hoag et al. *v.* Aiman, Appellant.

Argued October 26, 1938. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Ardemus Stewart,* for appellant.

*George W. Harkins, Jr.,* for appellee.

OPINION BY STADTFELD, J., December 20, 1938:

This is an appeal by defendant from the judgment entered by the court below, in an opinion by FINLETTER, P. J., for want of a sufficient affidavit of defense.

The plaintiffs, as liquidating trustees of Central Progressive Building and Loan Association, sued upon two promissory notes, the one for $600, given on July 25, 1928, to the Artisans Central Building and Loan Association, another for $150 given on February 7, 1932, by defendant to the Central Progressive Building and Loan Association. With each of these notes, defendant assigned to the respective association, certain shares of stock owned by him, of the association.

The Artisans Association on October 9, 1930, merged with the Progressive Assembly Building and Loan Association to form the Central Progressive Building and Loan Association. The first note passed by the merger to the last named association, whose liquidating trustees bring this suit upon both notes.

At the time of the merger, there was a ten per cent impairment of the value of the shares of the Artisans Association. It was provided in the merger agreement that there should be no withdrawals of shares for two years from the date of the approval of the merger agreement, and that should any stockholder cease making payments on the shares of stock held by the said stockholders at any time within two years from the date of the said agreement of merger, they would not demand payment of the cancellation value of their shares or the adjusted paid-in value prior to two years from the date of approval of said agreement of merger. This period extended to October 9, 1932. Before the two years' period had expired, the association was found to be insolvent, and in March, 1932, under instruction from the

Banking Department, the association began to segregate dues paid on free shares.

Subsequently, under direction from the Banking Department, the association went into voluntary liquidation. At this time, there was a further impairment of fifty per cent.

There was due on the notes at this date, $831.95. During the progress of the liquidation, dividends were declared on the shares assigned as collateral for the notes amounting to $294.59, on July 26, 1933, September 27, 1933, August 1, 1935, and November 24, 1937. This amount was retained by the trustees and credit given to defendant on the notes, leaving a balance due of $537.36.

The defense set up in the affidavit is that on August 27, 1931 (that is within the two years' period during which withdrawals could not be made), defendant sought to withdraw the collateral stock. He wrote to the secretary of the association asking for "the cancellation" of the stock. He alleges that on that date, the stock was worth $1,040.75, which would pay the loan and leave $290.73 due the defendant.

He further alleges that from September 1, 1932, to April 30, 1933, that is, after the two years' period had expired, withdrawals were permitted. He does not allege that he demanded withdrawal after the two years' period had expired. He now relies entirely on the "notice of cancellation" made when he had no right under the terms of the merger agreement to withdraw.

He also alleges, without giving the dates of the transactions, that he is informed that other stock loans were settled by the liquidators, at less than their face. There is no statement of the circumstances of these settlements.

The principal question involved in this case is whether a borrowing stockholder in a building and loan association can have the value of his shares applied in payment of his loan, when at the time such application

could be made, the association was admittedly insolvent.

The affidavit of defense admits the insolvency of the association as averred in the amended statement, prior to the expiration of the two year period which ended on October 8, 1932, which was the earliest date on which appellant could be entitled to payment.

After the alleged notice of cancellation on August 27, 1931, to-wit: February 7, 1932, defendant-appellant negotiated the loan on the note for $150 with the shares of stock as collateral, hereinbefore referred to. This necessarily operated as a withdrawal of the request for cancellation. He also accepted the dividends which were applied in reduction of his indebtedness.

Nowhere in the affidavit of defense is there any denial of the fact that the association became insolvent prior to the expiration of the two year period which ended on October 8, 1932. That was the earliest date on which appellant could be entitled to payment. The association then being insolvent, there could be no application of the value of his shares. This has definitely been decided by our Supreme Court in *Williams et al. v. Wenger*, 319 Pa. 73, 179 A. 242, in which it was said, at p. 79: "An appropriation is a form of withdrawal and is within the merger agreement assented to by the appellant herein; if this were not so, the effect would be to place the entire burden resulting from the suspension of withdrawals upon nonborrowing members and thus place those indebted to the association in a preferred position. In view of the later insolvency of the association, she will not be allowed to take advantage of any preference obtained through an appropriation on the books of the association to the serious detriment of the remaining members. See *Sullivan Mfg. Co. v. Ideal B. & L. Assn.*, 313 Pa. 407; *Crawford v. New Sparton B. & L. Assn.*, 112 Pa. Superior Ct. 113, 117." See also, *Steinau v. Great Oak B. & L. Assn.*, 322 Pa. 545, 185 A. 818.

The cases cited by appellant support the principles

that after insolvency the affairs of the association must be wound up; that in so doing, the burdens should be adjusted equally; and that, after payment of general creditors, the residue should be distributed pro rata among the shareholders. These cases have no application to the case under consideration, as appellant has received his pro rata distribution credited on his stock loan; and to permit him to escape payment of the balance would be grossly inequitable, and throw an undue burden upon the other members, who are entitled to their proportion of the amount which is still due by him.

Appellant's contention that someone else was paid and that some settlements were made at less than one hundred per cent and that such constitute a preference against him, do not constitute a defense to his liability on the notes in suit. If those things were done improperly, they affect all shareholders, not merely appellant. The remedy, as indicated in the opinion of the court below, "would be to sue such stockholders to recover the excess payments or credits, and not to repeat the error by overpaying the defendant." If the trustees made improper adjustments, that can be determined when their account is filed, and should there be liability on the part of the trustees, their surety would be responsible.

We believe the court below arrived at a correct conclusion in entering judgment against the defendant.

Judgment affirmed.