## Lucca v. Home Buyers B. & L. Assn.

*Charles R. Norberg,* for petitioner.

*G. Harry Ditter,* for respondent.

OLIVER, P. J., June 18, 1941.—This is a petition for satisfaction of a mortgage under the Act of June 11, 1879, P. L. 141, as amended by the Act of May 13, 1931, P. L. 123, 21 PS §687.

From the petition and answer, the following facts appear: On June 7, 1920, James Lucca, petitioner's husband, then the owner of the premises situated at 1527 South Mole Street, Philadelphia, executed and delivered a mortgage in the sum of $1,800 to the Admiral Dewey Building & Loan Association to secure a loan in the same amount made to him by the association. At the same time, Lucca purchased nine single shares of the 43rd series of stock of the above association, which were immediately assigned to the association as collateral security for the loan. Under the assignment the association was given the right to appropriate the shares toward payment of the bond and mortgage. The shares were registered on the books of the association in the name of James Lucca and so remain to the present date. Subsequently, the above association became merged with, and was succeeded by, respondent. On June 21, 1922, James Lucca disappeared without previous warning to anyone and has not since been seen or heard from by petitioner, nor has she been able to learn his whereabouts despite frequent inquiries.

Prior to his disappearance, Lucca executed and delivered to the Uneeda-Joshua Building & Loan Association a second mortgage on the above premises. Up to the time of his disappearance, Lucca had paid $312.75 to the original association in regular instalments on account of the above shares as interest and premium. Subsequent to his disappearance, petitioner paid from her own money to the original association and to respondent $3,533.37 by regular instalments until May 16, 1938, on account of the above shares, in order to prevent the foreclosure of the first mortgage on the above premises, which she has continuously occupied as her home. Meanwhile, an action was instituted against Lucca and the second mortgage foreclosed in Common Pleas Court No. 2 of Philadelphia County, as of December term, 1931, no. 1747. At the sheriff's sale pursuant to the foreclosure proceeding title to the above premises was obtained on January 4, 1932, by Rosario Gazzara, who with his wife on June 29, 1934, by deed transferred title to petitioner, who has held it to the present date. The above transfers of title were made subject to the subsisting lien of the first mortgage.

On May 16, 1938, the first mortgage matured and the nine shares in respondent association became fully paid and were declared matured. On September 10, 1938, again on October 4, 1938, and many times thereafter, petitioner has demanded of respondent that the above matured and fully-paid shares be applied to the payment of the first mortgage and that the first mortgage be thereafter satisfied of record. But respondent has refused to comply with such demands. Consequently, petitioner filed the present rule on respondent to show cause why satisfaction should not be entered of record in accordance with the Act of 1879, supra.

Under that act, as amended, supra, "In all cases where payment has been made of all the money or amount due or to become due on any mortgage, and the legal or equitable holder or holders thereof . . . have failed from any cause whatever to enter satisfaction upon the record of

the same, and shall so continue for six months after payment thereof, in such case the mortgagor . . . or the owner or owners of the mortgaged premises, . . . may petition the court . . . whereupon the court, on due proof being made that the full amount due upon said mortgage has been paid, is hereby authorized and required to decree and direct that satisfaction shall be entered upon the record thereof. . . ."

Respondent contends that, although the assignment gives it the right to appropriate the shares to the mortgage, such right is optional and its exercise may not be compelled by anyone other than the shareholder of record; that petitioner has no standing to institute the present proceeding; and that a satisfaction of the mortgage by an appropriation of the shares would leave respondent open to a possible liability in the future to James Lucca if he should return.

It is admitted that the payment of dues on shares in a building and loan association does not ipso facto constitute a payment of so much of the mortgage debt and that an act of appropriation by the shareholder or the association is required to effectuate such payment: Sullivan & Sons Mfg. Co. et al. v. Ideal B. & L. Assn., 313 Pa. 407, 411 (1934), and cases cited therein. It has also been held that a terre-tenant cannot compel the association, upon default of the mortgage, to appropriate the shares to the mortgage debt before it proceeds to foreclose: Spring Garden Assn. v. Tradesmen's Loan Assn., 46 Pa. 493 (1864) ; Link v. Germantown Bldg. Assn., 89 Pa. 15 (1879) ; see also Erthal v. Glueck et al., 10 Pa. Superior Ct. 402 (1899). But those cases are clearly distinguishable from the present situation. They involved unmatured stock, whereas here the shares have been declared matured, and there has been no attempt by respondent to foreclose upon the mortgage. Furthermore, the language of section 615 of the Building and Loan Code of May 5, 1933, P. L. 457, 15 PS §1074-615, is clear and mandatory in its direction that "the mortgage shall be forthwith

satisfied" upon a declaration of maturity of shares which have been pledged to the association as security for a loan which is also secured by a mortgage on real property. The association is given no discretion in such situation. See Graham v. Mt. Airy B. & L. Assn., 102 Pa. Superior Ct. 116 (1931).

That this section of the code is effective in the present situation admits of little doubt. Section 4 of the code provides that it "shall not affect any act done, liability, duty or obligation incurred, or right accrued, prior to the effective date of this act. . . ." But, this section was not intended to restrict the application of procedural changes in the law: Harr v. Mikalarias, 328 Pa. 48, 56 (1937); Harr v. Lower Chichester Twp., 337 Pa. 395, 398 (1940). The direction in section 615 to satisfy the mortgage when the shares given as collateral security have matured is clearly of remedial nature. The association through this provision receives the full amount of its debt and is entitled to no more. Its substantive rights are not prejudiced in any way: In re Hilltop B. & L. Assn., 35 D. & C. 459, 462 (1939). Nor will the application of section 615 to the present situation give that section retroactive effect. The shares involved herein matured several years after the effective date of the code.

We are mindful that before relief may be granted under the Act of 1879, supra, payment of the mortgage must have been made. However, under the circumstances here presented we shall treat the mortgage debt as having been paid. This proceeding is equitable in nature and the duty under the Building and Loan Code to satisfy the mortgage is purely ministerial, involving merely a bookkeeping entry since the total amount of the debt has been received in the form of dues on the shares. Furthermore, the equities of the situation are entirely in petitioner's favor, she having met practically all the instalments on the shares as they became due.

Respondent's contention that petitioner has no standing in this proceeding is unsound. The mortgage has

been paid with no expense to the mortgagor and yet remains as a cloud upon petitioner's title. Under the circumstances her interest in removing this obstacle to a clear title is paramount. See Grossman et ux. v. Grubb, 99 Pa. Superior Ct. 332 (1930). Furthermore, the Act of 1879, supra, expressly includes the "owner" within the group entitled to the benefits of its provisions.

Respondent's fear of being saddled with a claim for the shares by the mortgagor if he should reappear is groundless. The association was clearly given the power by assignment to apply the shares to payment of the mortgage debt. Furthermore, under the Building and Loan Code, it has no alternative but to make such application. Under these circumstances, there could be no basis for a claim against it by the mortgagor.

The prayer of the petition is granted and the rule made absolute.