# Baldwin's Appeal.

The rule established in Long's Appeal, 11 Harris 297, and Yelverton *v.* Burton, 2 Casey 355, that there is no priority between several writs of foreign attachment when served on the same day, applies as well to writs of attachment-execution, and where they have been so served, no preference can be given, and distribution of the fund in the hands of the garnishee must be made *pro rata.*

March 25th 1878. Before SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. AGNEW, C. J., absent.

Appeal from the Court of Common Pleas of *Delaware county :* Of January Term 1876, No. 111.

Appeal of B. C. Baldwin from the decree of the court, sustaining the exceptions to the report of the auditor appointed to distribute certain funds in the hands of a garnishee.

On April 23d 1875, Richard L. Jones having two judgments against Samuel C. Bonsall, issued two writs of attachment-execution upon them to attach six shares of stock in "The Upper Darby Building and Loan Association." These writs were placed in the

86 483
175 41

86 483
41SC 502

hands of the sheriff at 3.25 and 3.30 P. M. respectively, upon the same day. On the same day Barkley C. Baldwin, having a judgment against Bonsall, also issued a writ of attachment-execution to attach the same stock, which was placed in the hands of the sheriff, as appears from his endorsement thereon, at 5.45 P. M. of the same day. To these writs the sheriff returned that he served them all on the garnishee on the 24th of April 1875 : the first two at 12.30 and the last one at 12.35 P. M. Interrogatories having been filed in each case, the garnishee answered, admitting the sum of $633.18 in its hands subject to the attachments.

An auditor was appointed by agreement of the parties, who reported a distribution of the fund pro rata among the attachments. Exceptions were filed to his report, and the court below, after argument, sustained the exceptions and awarded the whole fund to the first two attachments, and decreed that judgment should be entered against the garnishee accordingly. From this decree and judgment Baldwin appealed.

*H. C. Howard,* for appellant.—There is no priority as to payment between several writs of foreign attachment served or levied on the same day : Long's Appeal, 11 Harris 297. Among attaching creditors when process is served the same day there is no preference, and all must be paid pro rata : Yelverton *v.* Burton, 2 Casey 351. These were cases of foreign attachment, and the court below held that the rulings did not apply to attachments *sur* judgments. It is difficult to see why the same doctrine which applies to the service of foreign attachments should not apply to the others. The foreign attachment law is the parent of the attachment-execution, and after the service of the writ under the latter we are obliged to look to the former for all subsequent steps in the process. ·

That this same rule should apply to attachment-executions is in analogy to the ruling in Sheetz *v.* Hobensack, 8 Harris 412, where it is said the same rules apply to both forms of process as to the effect of the attachment.

An attachment upon a judgment is not an execution within the ordinary meaning of the term : Gemmill *v.* Butler, 4 Barr 232 ; Swanger *v.* Snyder, 14 Wright 218 ; Bancord *v.* Parker, 15 P. F. Smith 336.

Why should attachment-executions served on the same day have priority according to the hour of their service, more than foreign attachments ? To establish such a rule in foreign attachments was held to be not only contrary to principle, unjust and unreasonable, but to be attended with insurmountable difficulties, in ascertaining in many cases the precise status of different writs as to time of service.

*Ezra Lewis* and *Joseph J. Lewis,* for defendants in error.—An attachment under the Act of 1836, is a process to enforce the judg-

ment, and it is in substance, if not in form, an execution: Wray *v.* Tammany, 1 Harris 394; Hall *v.* Holmes, 4 Barr 250; Martin *v.* Scott, 2 Casey 103; Kase *v.* Kase, 10 Id. 131; Lewis *v.* Lewis, 11 Wright 127; Strouse *v.* Becker, 8 Id. 206; Franklin *v.* Rush, 1 Phila. R. 571.

The provision requiring the sheriff to endorse thereon the day of the month, the year and hour of the day, when the writ of execution comes to his hands, is general, and applies by the express words of the statute, to writs of fieri facias and to other writs of execution.

Executions issued the same day and delivered to the sheriff at the different periods of the day, must be paid out of the proceeds, in the order as to time in which they come to his hands: Ulrick *v.* Dreyer, 2 Watts 303; Shafner *v.* Gilmore, 3 W. & S. 438.

Mr. Justice GORDON delivered the opinion of the court, May 6th 1878.

At common law a fieri facias had relation to its *teste* and bound the defendant's goods from that time, so that if he sold them afterwards, they might still be taken in execution: Rob. Dig. 320. As this often worked great injustice to bona fide purchasers, the Act of Car. 2, ch. 3, provided, among other things, that a fieri facias, *or other writ of execution*, should bind the property or goods of the person against whom it issued, only from the time such writ should be delivered to the officer by whom it was to be executed, and he was required to endorse, upon the back thereof, the day of the month and year when he received the same: Id. 310. Our Act of June 16th 1836, is, in effect, a transcript of the above, and embraces the same intent, to wit, the limitation of the lien, of the writ of fieri facias, as it stood at common law, to the time of its receipt by the executive officer. The two statutes differ only in this, that, by the former, the day and year only, when the writ came to hand, were to be endorsed; thus leaving the lien to cover the whole of the day on which the writ was received, whilst the latter requires the endorsement of the hour also, and, so, limits the lien to the fraction of a day. The intent of both acts is, however, the same; not to furnish *data* for distribution, but to prevent injury to honest purchasers. As was said in Long's Appeal, 11 Harris 297, the practice of paying writs of fieri facias out of the proceeds of the defendant's personal property, in the order in which they are delivered to the sheriff, rests upon *usage* sanctioned by the act, and not on principle. It is, then, obvious that the act just recited can have no bearing upon the writ called "attachment-execution," since it is not such an execution as does now, or ever did, bind the defendant's goods from its *teste*, or even from the time it came into the sheriff's hands, but only from the time of service upon the garnishee or levy upon the goods themselves. The execution of

[Baldwin's Appeal.]

such a writ, from its very nature, never could work detriment to good faith purchasers, and therefore, from it they never needed protection. It follows that if we adopt the *usage* above mentioned, we must do so without the sanction of the act. This, however, will not do, for the statute, which creates this writ, interposes and directs us to look for rules and analogies in the laws governing foreign attachments. The process, to levy an execution upon stock, is declared to be in the *nature of an attachment;* and "*from and after the service of such writ,* all stock belonging to the defendant, in the corporation upon which service shall be so made, and all debts and deposits of money, and all other effects belonging or due to the defendant, by the person or corporation upon which service shall be so made, shall remain *attached* in the hands of such corporation or person, *in the manner heretofore practised and allowed in the case of foreign attachment.*" Whilst, therefore, this process may be regarded as an execution, in that it is intended to carry into effect the final judgment of the court, and not merely to compel appearance, yet it is wanting in some of the important features of such a writ, and in this notably, that it is not in itself final, but requires execution for its enforcement. We think, therefore, that this process is nearest of kin to the foreign attachment, and that the rules governing that writ must also govern this one.

Having arrived at this conclusion, we do not hesitate to adopt the rule settled by Long's Appeal, 11 Harris 297, and Yelverton *v.* Burton, 2 Casey 355, that is to say, the several writs of attachment having gone into the sheriff's hands, and having also been served, on the same day, no preference can be given to either, but distribution must be made to them *pro rata.*

> The decree of the court below is reversed; the report of the auditor is reinstated, and distribution ordered accordingly. It is further ordered, that the costs be paid by the appellee.