## Harris's Appeal.

Although a borrowing member of a building association, who has assigned his stock to the association, and also given to it a mortgage upon his property to secure the payment of the loan, may, by express act, apply his payments of stock dues in part liquidation of his mortgage debt, such payments do not *ipso facto* amount to payment on account of the mortgage.

The privilege of subsequently appropriating stock payments to the payment of the mortgage debt is a privilege personal to the debtor and cannot be exercised by anyone other than himself.

Where the debtor, by assigning his stock to a third person for value, has manifested an intent contrary to his personal right of appropriation, one who has no lien upon the stock, but merely holds a junior mortgage upon the land, cannot compel the association to appropriate the stock payments to the satisfaction of the mortgage debt, upon the ground that the association, having two funds in its control wherewith to satisfy its lien, is bound to primarily resort to the fund without the reach of the second mortgagee.

The facts that the second mortgage was informed by the mortgagor at the time he took his mortgage that a certain sum had been paid upon the mortgages held by the association, and that the secretary of the association admitted that such amount had been received, without specifying to which indebtedness it had been applied, do not raise such an equity in behalf of the second mortgagee as to entitle him to demand the application of it to the mortgages.

(Decided April 5, 1886.)

NOTE.—Payments made by a member of a building association are not *ipso facto* to be applied to the debt. North America Bldg. Asso. v. Sutton, 35 Pa. 463. But the borrower may so direct. York Trust, R. E. & Deposit Co. v. Gallatin, 186 Pa. 150, 78 Am. Dec. 349, 40 Atl. 317. And he may elect otherwise. Early's Appeal, 89 Pa. 411. The member may, by his conduct or agreement, waive his right to apply the payments to his loan. Philadelphia Mercantile Loan Asso. v. Moore, 47 Pa. 233; Kelly v. Perseverance Bldg. Asso. 39 Pa. 148. The association may apply payments made to stock assigned to it in satisfaction of the debt, where the borrower is in default. Wadlinger v. Washington German Bldg. & L. Asso. 153 Pa. 622, 26 Atl. 647.

Appeal from the Common Pleas, No. 2, of Philadelphia County distributing a fund made by a sheriff's sale under a judgment.    Affirmed.

This case arises out of the distribution of a fund produced by a sheriff's sale of the property of Alexander S. Bunting, under a judgment obtained by the Equity Building & Loan Association.

Bunting was a member of the association and the owner of 20 shares of stock.    He exercised his right as a stockholder to borrow, and gave bonds to the association for $1,000 and $3,000, secured by mortgages on his property.    As a further or additional security he transferred to the association his 20 shares of stock.

Subsequently he gave to Harris, the appellant, a mortgage of $2,400 which covered, *inter alia,* the same property which he had mortgaged to the building association.

Bunting afterwards confessed judgments to various parties, and later still assigned his interest in said building association stock to one Nancy Bradford.

He defaulted in the payment of the dues and interest provided for in his bond.

Judgment was obtained against him, upon the first mortgage of $1,000, and the property was sold in execution under a writ of levari facias, realizing $4,160.42.

The fund was paid into court, and the building association claimed the judgment in this case, $1,139.82, and the balance on account of the mortgage of $3,000.

Harris claimed that Bunting's stock payments to the amount of $1,726.02 should be applied to the payment of the building association mortgages, and that the fund made at the sale after paying the balance of its mortgages should be paid to him.

The auditor delivered the following opinion:

The two bonds and mortgages of the Equity Building & Loan Association being respectively the first and second liens upon the premises sold are prima facie entitled to the fund.

Mr. Harris, the second mortgagee, however, contended that the monthly payments made by Bunting on his 20 shares of stock and credited by the association to his stock account should be applied to reduce his indebtedness on his mortgages, and in support of this position advanced three propositions, *viz.:*

1. That such payments were *ipso facto* payments on account of the loans.

2. If otherwise, they should be so appropriated upon general equitable principles.

3. Or, in the alternative, that the auditor would so appropriate them under the special circumstances of this case.

The arguments for and against these propositions were ably and earnestly elaborated in oral and written statements.

I. The status of a member in a building association and the machinery whereby the association attempts to carry out the objects of its incorporation are familiar. The association is composed of a number of stockholders or members who are bound to contribute the sum of $1 a month per share, together with fines thereon if not promptly paid, until each share is worth $200, at which time the association is wound up.

Each member is also entitled to borrow from the association the sum of $200 a share, upon giving adequate security, and he assigns his stock to the association as additional security. These loans are awarded to the highest bidder.

If a member does not borrow, he is entitled to withdraw from the association upon the terms provided by the act of assembly. If, however, he becomes a borrowing member, he sustains a double relation to the association, and is thereafter liable: First as a member, to continue his payments on his stock in order to raise funds which can be loaned to others; and second, as a debtor, to pay interest upon the amount loaned to him. And he can only withdraw from the association upon settling his account.

Two accounts are opened against him on the books of the association, and his stock payments are credited to his stock account and his interest payments are credited to his loan account.

This was done in the present case.

When the association is wound up, *viz.*, when the stock is worth $200 a share, the borrowing member's mortgage is satisfied, and his stock is canceled. This, however, is a rule of convenience and not of law, for mutual debts do not necessarily extinguish each other, and there is no legal rule preventing the association from assigning the mortgage and paying the borrowing member the value of his stock; nor is there anything to pre-

vent such member from paying his loan before the stock matures, and thereafter holding his stock clear of encumbrance.

The borrowing member does not, by the mere fact of borrowing, become any the less a stockholder. On the contrary, his rights and liabilities as such stockholders, save his right to withdraw, and his liability to be sold out under the conditions of his mortgage, continues in full force. This stock possesses the same voting power as before.

The land is the primary fund for the payment of the mortgage, and the assigned stock is collateral therefor. The borrowing member can, indeed, appropriate the payments made on his stock in part satisfaction of his loan account, and by paying the balance he can have his mortgage satisfied and cease to be a member of the association; but this is a privilege personal to himself.

Hence, the argument which seeks to *ipso facto* appropriate every payment of whatever nature made by a borrowing member as a payment on account of his mortgage, and which practically operates as an extinguishment of such member's stock at the moment of his obtaining a loan, is opposed to the universal practice and theory of building associations, and is also opposed to the provisions of the act of assembly and of the constitution and by-laws of this association, which recognize such stock as a continuing obligation.

It is, moreover, opposed to the condition of Bunting's mortgage, which is in the customary form of such obligation. These mortgages are absolute upon their face and are conditioned for the payment of $4,000 in one year thereafter, together with the sum of $20 on the third Thursday of each month thereafter, as and for the monthly contribution on 20 shares of the capital stock of the association now owned by Bunting.

Under the term of these mortgages Bunting could undoubtedly have paid off the mortgages at the expiration of one year from their date, and could thereafter have continued his stock interest.

Moreover, the result of a contention which could extinguish the stock by the mere fact of obtaining a loan might operate with much harshness upon a borrower; for, if he had obtained his loan at a low premium, and other borrowers had subsequently paid much higher premiums for other loans, which is a very usual case, the first borrower's stock would rapidly rise in value;

yet, no matter what the land was worth, all that he could be credited upon his loan account would be the actual payments; and the real value of his stock would be sacrificed. Watkins v. Workingmens' Bldg. & L. Asso. 97 Pa. 514; Hazel Loan & Bldg. Asso. v. Groesbeck, 41 Phila. Leg. Int. 16.

Other instances will readily occur, and, hence, a series of harmonious decisions receding from the earlier views expressed in Kupfert v. Guttenberg Bldg. Asso. 30 Pa. 465, and 471, have conclusively settled that, although a borrowing member may, by express act, apply his payments of stock due in part liquidation of his mortgage, yet that such payments do not *ipso facto* amount to payment on account of his loan indebtedness.

The point was squarely presented and decided in North American Bldg. Asso. v. Sutton, 35 Pa. 463, 468, 78 Am. Dec. 349, and that decision has since been consistently followed. Kelly v. Perseverance Bldg. Asso. 39 Pa. 148; Spring Garden Loan Asso. v. Tradesmen's Sav. Fund & L. Asso. 46 Pa. 493; Link v. Germantown Bldg. Asso. 89 Pa. 15; Economy Bldg. Asso. v. Hungerbuehler, 93 Pa. 259; Building Asso. v. Eshelbach, 7 Phila. 189; Hazel Loan & Bldg. Asso. v. Groesbeck, 41 Phila. Leg. Int. 16.

II. It was then contended that, upon general equitable principles applicable to the marshaling of assets, the association should be compelled to appropriate the stock payments in discharge of its judgment on the mortgages, upon the ground that, having two funds in its control wherewith to satisfy its judgment, it was bound to primarily resort to the collateral security as being a fund without the reach of the second mortgagee; and reference was made to certain cases in New Jersey, wherein such an appropriation was made in favor of a second mortgagee as against the attaching creditors of a borrowing member of a building association. Herbert v. Mechanics' Bldg. & L. Asso. 17 N. J. Eq. 497, 90 Am. Dec. 601; Phillipsburg Mut. Loan & Bldg. Asso. v. Hawk, 27 N. J. Eq. 355.

Whether the principle of these cases is applicable to building associations in Pennsylvania may, in view of our own decisions, be doubted, for it has been consistently held in this state that this privilege of subsequently appropriating stock payments to the payment of another indebtedness is a privilege personal to the debtor, and cannot be exercised by anyone other than himself. Spring Garden Loan Asso. v. Tradesmen's Sav. Fund &

L. Asso. 46 Pa. 493; Kraemer v. Springfield Sav. Fund & L. Asso. 6 W. N. C. 267; Economy Bldg. Asso. v. Hungerbuehler, 93 Pa. 261.

And, so far as the attaching creditors are concerned, an obvious distinction exists between this case and Early's Appeal, 89 Pa. 411, for in the latter case the attachment executions issued after the debtor had elected to appropriate his stock, while here the association itself was garnished before such election.

In Central Bldg. Asso. v. Schmidt, 12 W. N. C. 239, the right of subrogation, which would otherwise have existed on behalf of the holder of the next encumbrance on the land, was held to be devested by the rights acquired by creditors claiming under attachment executions issued before the election.

But, however this may be, even if such equitable rights of appropriation exist, there is a fact in this case conclusive against its exercise in favor of the second mortgagee, for in February, 1883, the defendant, Bunting, had sold and transferred his 20 shares of stock to Nancy Bradford, subject to the prior transfer to the association, and the latter was duly notified of the assignment. This was over two years before the auditor was requested to appropriate the value of this stock in discharge of Bunting's loan account.

Hence, this equity, existing on behalf of Nancy Bradford's estate, to prevent confiscation of her stock is at least equal to that of the second mortgagee to so appropriate it. In fact it is superior; for her estate holds the legal title; and it is admitted in all the cases, including the decisions in New Jersey, above referred to, that, where an equal or superior equity has intervened, prior to the actual exercise of the right of appropriation, a chancellor will refuse to interfere.

Therefore, in the present case, where the debtor, so far from exercising this personal right of appropriation, has most conclusively manifested a contrary intent by assigning his stock to a third person for value, there can be no obliteration of this stock, in favor of one who has no lien upon it, but who merely holds the next encumbrance upon the land; and, as such transfer puts it out of the power of the debtor himself to direct any subsequent appropriation of it, it equally debars those claiming under him from compelling the exercise of such an alleged right.

The point is conceded in Herbert v. Mechanics' Bldg. & L. Asso. 17 N. J. Eq. 497, 90 Am. Dec. 601, and was in effect

decided in Schober v. Accommodation Sav. Fund & L. Asso. 35 Pa. 223; Philadelphia Mercantile Loan Asso. v. Moore, 47 Pa. 233; Endlich, Bldg. Asso. § 468.

III. The third point, *viz.*, that special circumstances existed in this case which required an appropriation of these stock payments in case of the second mortgage, was but faintly pressed. The only special circumstances were, that, upon accepting Bunting's bond and mortgage, which also covered another property than the present, Mr. Harris was informed by Bunting that he, Bunting, had paid $1,600 to the association on account of these mortgages; and that his debt to the association was considerably reduced by these payments; but inquiry from the secretary of the association failed to confirm any payment on account of the mortgages, the secretary simply informing Mr. Harris that Bunting had paid in about $1,600. This was as referable to Bunting's stock account as to his loan account. Indeed, in building association parlance, it was much more so.

Bunting himself was examined, and, although his ideas were somewhat obscure as to the status of a borrowing member in a building association, yet it was very evident that he never, up to that time or subsequently, made any attempt to appropriate his prior or subsequent payments of $20 a month in favor of Mr. Harris's mortgage, nor ever considered that he had done so; and that the association itself thereafter, as before, regularly credited such payments to Bunting's stock indebtedness; and Mr. Harris himself never at any time requested such appropriations to be made. The entire evidence is opposed to the existence of any intention to merge the stock at the date of the second mortgage. Subsequently the stock was voted and paid upon, and it was afterwards sold and transferred by Bunting, and was recognized by both Bunting and the association as an existing liability.

The auditor's report having been confirmed by the court below, Harris appealed.

*H. G. Harris, pro se.*

*H. C. Thompson* for appellee.

PER CURIAM:
We see no reason for reversing the finding of facts and conclu-

sions of law as reported by the auditor and approved by the court.

· The opinion of the auditor contains a clear and correct statement of the law applicable to the facts, and the decree is affirmed thereon.

Decree affirmed and appeal dismissed, at the costs of the appellant.