344        HILL v. WHITESIDE, Appellant.

Bicking's Est., 15 Pa. C. C. R. 284; Harris's Est., 19 W.
N. C. 538; Miller's App., 30 Pa. 478; Allegheny Valley
R. R. Co. v. Dickey, 131 Pa. 86; Colt's Case, 215 Pa.
333; Hoffman's Est., 209 Pa. 357.

PER CURIAM, July 2, 1912:
The order appealed from is affirmed at the cost of the
appellant, on the opinion of the learned President
Judge of the Common Pleas.

---

# Herr v. Lancaster Trust Company, et al., Appellant.

*Judgments—Judgments in different counties—Priorities—Marshaling—Equity.*

1. The payment to an execution creditor of the proceeds of a sheriff's sale of real estate is not a voluntary payment by the debtor, but a payment in invitum. An execution creditor, having several liens upon the real estate sold, cannot apply such proceeds to whatever lien he pleases, but the law will apply them to such liens as are divested by the sale in the order of their priority.

2. Where a creditor holds two judgments against his debtor as the first and second liens on the debtor's real estate in one county, and the same judgments by transcripts in the same order as the first and third liens in another county, and he issues an execution in the first county on the first judgment, from the proceeds of which he makes the first judgment except a small balance, but not the second, and these proceeds are distributed to him by the sheriff, and thereafter he issues execution on the first judgment in the second county he will not be entitled to apply the proceeds after payment of the balance on his first judgment, to the second judgment, to the exclusion of the judgment of another person which is the second lien in the second county.

Argued May 21, 1912. Appeal, No. 252, Jan. T., 1912, by defendants, from judgment of Superior Court, Oct. T., 1910, No. 95, reversing judgment of C. P. Lancaster Co., Feb. T., 1910, No. 17, on case stated in case

of Henry E. Herr v. The Lancaster Trust Company and
Joseph T. Breneman.    Before FELL, C. J., BROWN,
MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER,
JJ.   Affirmed.

Case stated to determine priority of liens.    (See Herr
v. Lancaster Trust Company, 47 Pa. Superior Ct. 63.)
The case stated was as follows:
On January 14, 1909, the Lancaster Trust Company
issued execution upon its judgment to August Term,
1907, No. 229, against Milton Kindig, in the Court of
Common Pleas of Lancaster County, to April Term,
1909, No. 1, Execution Docket, and levied upon certain
real estate belonging to the defendant, situated in the
city of Lancaster.
By virtue of said writ, the sheriff sold said real estate
on April 24, 1909, for $20,050.   The amount due on said
judgment was $20,000, with interest at  ...... per
cent, from October 1, 1907.   The sheriff on May 10,
1909, paid to the Lancaster Trust Company $19,900.14,
net proceeds of said sale.   The liens upon the real
estate so sold, in order of their priority, were as follows:
1. Lancaster Trust Company, August Term, 1907, No.
229, for $20,000, entered October 1, 1907.   (A revival
of the judgment entered on October 2, 1902, to August
Term, 1902, No. 255.)
2. Lancaster Trust Company, November Term, 1905,
No. 253, for $10,000 (collateral), entered January 8,
1906.
3. Henry E. Herr, April Term, 1908, No. 274, for
$3,000, entered June 9, 1908, the amount due on said
judgment being $1,274.47, with interest from June 16,
1908.
On December 11, 1909, the Lancaster Trust Company
issued execution in the Court of Common Pleas of York
County upon its judgment entered in said county to
October Term, 1906, No. 358, against said Milton Kin-

dig, and by virtue thereof, the sheriff of York County levied upon, and on January 3, 1910, sold certain real estate of said Milton Kindig, situate in York County, for $7,750, the net proceeds of said sale over and above costs amounting to $7,617.66.

The liens upon said real estate in York County, according to their priority, at the time of said sale, were as follows:

1. Lancaster Trust Company, October Term, 1907, No. 310, entered October 2, 1907, for $20,000. (A revival of the judgment entered October 2, 1902, to August Term, 1902, No. 317, which was a transcript from Lancaster County of the judgment entered to August Term, 1902, No. 255.)

2. Lancaster Trust Company, October Term, 1906, No. 358, for $3,000, entered December 31, 1906.

3. Henry E. Herr, April Term, 1908, No. 417, entered June 10, 1908, for $3,000, on which there is due $1,274.47, with interest from June 16, 1908. (A transcript from the Court of Common Pleas of Lancaster County to April Term, 1908, No. 274.)

4. The Lancaster Trust Company, April Term, 1909, No. 305, entered May 14, 1909, for $10,000. (Transcript from Lancaster County, November Term, 1905, No. 253.)

The entire indebtedness of Milton Kindig to the Lancaster Trust Company, on January 3, 1910, was $14,842.20. The amount due on the $20,000 judgment to October Term, 1907, No. 310, if the entire net proceeds of the sheriff's sale of Milton Kindig's real estate in Lancaster County is under the law properly credited thereon, is $2,117.30.

The net proceeds of the sheriff's sale of said real estate in York County, by agreement of the parties interested, has been paid to J. T. Breneman, trustee, to be distributed by him to the parties legally entitled to the same.

The Lancaster Trust Company, defendant, claims the right to apply so much of the proceeds of the said sale of real estate of Milton Kindig, which was situated in Lancaster County, to the payment of the judgment for $10,000, entered to November Term, 1905, No. 253, which was a second lien at the time of said sale, as may be necessary to pay and satisfy said judgment.

The plaintiff, Henry E. Herr, denies this right, and claims that the proceeds of said sale must be applied on account of the payment of the first lien for $20,000, entered to August Term, 1907, No. 229, in which case the judgment of Henry E. Herr, to April Term, 1908, No. 417, York County, would be entitled to be paid out of the proceeds of the sale of the real estate in York County as aforesaid.

If, under the foregoing statement of facts, the court be of opinion that the judgment of Henry E. Herr, to April Term, 1908, No. 417, is entitled to be paid out of the proceeds of the execution issued in York County, then judgment to be entered in favor of Henry E. Herr and against the defendants, for $1,274.47, with interest from June 16, 1908, to January 3, 1910, $118.53, and attorney's commissions, $65.00, making a total of $1,458.

But, if the court be not of that opinion, then judgment to be entered for the defendants, costs to follow the judgment, either party reserving the right to take an appeal from such judgment.

The court entered judgment for defendant on the case stated.

The opinion of the Superior Court by PORTER, J., was as follows:

This case involves the distribution of the proceeds of a sale by the sheriff of York County of certain real estate situate in that county, as the property of Milton Kindig, under an execution upon a judgment held by the Lancaster Trust Company. The said trust com-

pany and Herr, the plaintiff, each held judgments in both Lancaster and York Counties, against Kindig, who owned real estate in each of the counties, but the order of priority of lien of such judgments was not the same in both counties. The case stated agreed upon which will appear in the report of this case, fully recites the facts and obviates the necessity of reciting them at length in this opinion. The liens upon the real estate of Kindig in Lancaster County stood in the following order: First, a judgment for $20,000.00, held by the Lancaster Trust Company; second, a judgment for $10,-000.00, held by said trust company, and third, a judgment held by Herr, the appellant, for $3,000.00, upon which there remain due $1,274.47, with interest from June 16th, 1908. The trust company issued an execution upon its $20,000.00 judgment, which was a first lien, and under that execution the property of Kindig in Lancaster County was sold for $20,050.00, and the sheriff, on May 10th, 1909, paid to the Lancaster Trust Company $19,900.14, net proceeds of said sale. Transcripts of the Lancaster County judgments above referred to had been entered in York County and the $20,-000.00 judgment of the trust company was also the first lien upon the land in that county, but the lien of the $3,000.00 judgment held by Herr, was in that county prior to that of the $10,000.00 judgment held by the trust company. On December 11th, 1909, seven months after the trust company had received the proceeds of the sale of the Lancaster County real estate it issued upon the $20,000.00 judgment, which was the first lien, in York County, and the sheriff of that county sold the land of Kindig there situated, the net proceeds of said sale being $7,617.66, which amount was by agreement of the parties paid to Joseph T. Breneman, trustee, and the case stated submitted to the court below to determine the rights of the parties in distribution. The point at issue between the parties is made clear by the following

quotations from the case stated: "The amount due on the $20,000.00 judgment to October Term, 1907, No. 310, if the entire net proceeds of the sheriff's sale of Milton Kindig's real estate in Lancaster County is under the law properly credited thereon, is $2,117.30." ...... "The Lancaster Trust Company, defendant claims the right to apply so much of the proceeds of the said sale of real estate of Milton Kindig, which was situated in Lancaster County, to the payment of the judgment for $10,000.00—which was a second lien at the time of such sale, as may be necessary to pay and satisfy said judgment." "The plaintiff, Henry E. Herr, denies this right, and claims that the proceeds of said sale must be applied on account of the payment of the first lien for $20,000.00, in which case the judgment of Henry E. Herr, to April Term, 1908, No. 417, York County, would be entitled to be paid out of the proceeds of the sale of the real estate in York County." The agreement as to the entry of judgment is that "If, under the foregoing statement of facts, the court be of opinion that the judgment of Henry E. Herr, to April Term, 1908, No. 417, is entitled to be paid out of the proceeds of the execution issued in York County, then judgment be entered in favor of Henry E. Herr and against the defendants, for the sum of $1,458.00." The learned judges of the court below sustained the contention of the appellees, held that the trust company had the right to apply the proceeds to the sheriff's sale of real estate in Lancaster County first to the payment of the $10,000.00 judgment, which was a second lien, and then apply the remainder of the fund upon account of the $20,000.00 judgment, which was a first lien, thus leaving unpaid on that judgment an amount more than sufficient to absorb the proceeds of the sale of the York County real estate, and entered judgment for the defendants in the case stated.

The court below, in entering judgment in favor of the appellees, relied upon the authority of McDevitt

and Hays's App., 70 Pa. 373: We are of the opinion that the authority does not control and is not applicable to· the facts here presented. In that case the lands of a judgment debtor in Philadelphia County had first been sold, but the proceeds remained in the hands of the sheriff undistributed; his lands in Chester County were then sold and the question arose upon the distribution of the fund there realized. The judgment of Claghorn, Herring & Co. had been a first lien upon the lands in both Philadelphia and Chester Counties, and the holder of that judgment asserted the right to payment out of the Chester County fund. The appellants in that case contended that the sale of the land in Philadelphia County and the receipt by the sheriff of the judgment money worked, per se, a satisfaction of the first judgment, and that the holder of that judgment was not entitled to participate in the distribution of the fund arising from the sale of the land in Chester county. The court held that this contention was not well founded, that a sale of property and receipt by the sheriff are not, per se, satisfaction of any particular incumbrance, although its lien upon the land may be extinguished. It was further held in that case, as it has been in many others, that a creditor having two funds subject to his incumbrance, may pass by the first and come upon the second, dependent, however, upon the equities amongst the junior lien creditors. The difference between that case and this is marked. There the creditor had two funds, neither of which had been distributed, to either of which he had the right to resort, for his claim had not been paid. In the present case the land of the debtor in Lancaster County has not only been sold by the sheriff but the sheriff has actually paid to the trust company, the holder of the first and second liens, the proceeds of the sale, that fund has been distributed by process of law. The opening paragraph of the opinion in McDevitt and Hays's

Appeal clearly discloses that the decision was made to turn upon the fact that there had been no distribution of the fund raised from the sale of the land of the debtor in Philadelphia County. "Primarily the decision of this case rests on the question whether the sale of the property of Edward Devlin in Philadelphia, under the judgment of James Kitchenman, was a satisfaction of the judgment of Claghorn, Herring & Co." "When the property of the defendant in the judgment, real or personal, is sold under execution, and the proceeds paid into the hands of the sheriff, it is a discharge of the debtor's estate to that amount; but what creditor's debt it will extinguish is a question to be settled only by the final distribution and appropriation. It is that alone which determines what creditor shall be thrown upon the fund, or shall suffer the loss if he passes by it." When the trust company caused the land of Kindig in Lancaster County to be sold under its execution it took no steps to postpone the lien of its $20,000.00 judgment to that of its $10,000.00 judgment, which was a second lien. This was the condition at the time the property was sold and, also, at the time it received from the sheriff the proceeds of that sale. It is not necessary here to determine whether the trust company might after it had caused the land to be sold under an execution upon that judgment have waived its right of lien upon the fund, for this the trust company did not do. Had it waived its right of lien upon the $20,000.00 judgment, which was the first lien, the judgment of this appellant would have been paid in Lancaster County. The trust company accepted from the sheriff $19,-900.14, the net proceeds of the sale, an amount greatly in excess of what it would have been entitled to receive if it had waived the right of its $20,000.00 judgment to participate in the distribution.

The payment made to the trust company by the sheriff of Lancaster County was an involuntary one, so far

as the debtor was concerned. It was made to the trust company by the law, through the sheriff, and to the extent of such payment extinguished the debt, of which the lien upon the land had been an incident: Bergdoll v. Sopp, 227 Pa. 363. We are not free to consider or discuss the question whether the trust company had the right, after receiving the money from the sheriff, to apply the payment to its several liens in the manner which might best subserve its interests, that question has been authoritatively settled. "The payment to an execution creditor of the proceeds of a sheriff's sale of real estate is not a voluntary payment by the debtor, but a payment in invitum. An execution creditor, having several liens upon the real estate sold, cannot apply such proceeds to whatever lien he pleases, but the law will apply them to such liens as are divested by the sale in the order of their priority:" Pennsylvania Company for Insurance on Lives and Granting Annuities' App., 18 W. N. C. 469. When the trust company received the proceeds of the sale of the Lancaster County land, from the sheriff, the law applied it to the first lien, the judgment for $20,000.00, which was to that extent paid, leaving the amount due thereon $2,117.30. This is not the case of a creditor having a lien on two funds, and another having a lien on only one, within the same jurisdiction. The amount due on the $20,000.00 judgment having been reduced to $2,117.30 in Lancaster County no greater amount could, in the condition of the record, be collected upon that judgment in York County, upon the theory that the trust company should be subrogated as to its $10,000.00 judgment, the second lien in Lancaster County, to the rights which it had held under the $20,000.00 judgment, which had been partly paid by the sale in that county: McGinnis's App., 16 Pa. 445. The specifications of error are sustained.

The judgment is reversed and judgment is now entered in favor of the plaintiff and against the defendant for the sum of $1,458.00 with costs.

1912.]	Assignment of Error—Opinion of the Court.

*Error assigned* was decree of the court.

*W. U. Hensel,* for appellants.

*William H. Keller,* with him *John A. Coyle,* for appellee.

PER CURIAM, July 2, 1912:

The judgment is affirmed on the opinion of the Superior Court.

---

# Commonwealth, Appellant, *v.* Union Trust Company of Pittsburgh.

*Taxation—State taxes—Capital stock taxes—Trust companies —Reports—Duties of Auditor General—Act of June 13, 1907, P. L. 640—Banks and Banking.*

1. The report required to be filed by a trust company under the Act of June 13, 1907, P. L. 640, is intended to furnish the basis upon which the Auditor General shall fix the taxable value of the shares of stock but it is not conclusively binding upon him, and if he is not satisfied with its correctness, it is his duty to inquire further and make settlement upon the actual value of the stock as shown by the facts.

2. The Act of February 11, 1895, P. L. 4, transferring supervisory duties in matters relating to banking institutions from the Auditor General to the Commissioner of Banking in no way interferes with the power of taxation to be exercised by the Auditor General, who in the performance of his duties in this respect exercises his own functions without reference to what the Commissioner of Banking may do in matters pertaining to the supervision and regulation of banking institutions. In the exercise of his powers the Auditor General is not bound by the rules and regulations of the banking department.

3. Where upon settlement of an account for taxes upon the capital stock of a trust company the return as filed by the company appraises the value of its shares at $20,097,466.50, but it appears from data contained in the report that the company appraised securities representing undivided profits at their cost price and that their reported value in the tax year was greatly in