## Auto Building and Loan Association *v.* Hall
### (Derkin, Appellant).

Argued October 18, 1934.

Before T<small>REXLER</small>, P. J., K<small>ELLER</small>, C<small>UN</small>-
N<small>INGHAM</small>, B<small>ALDRIGE</small>, S<small>TADTFELD</small> and P<small>ARKER</small>, JJ.

*Herman Blumenthal,* for appellant.

*John Harper,* and with him *Joseph B. Quigley,* for
Auto Building and Loan Association.

*C. Laurence Cushmore, Jr.,* of *White, Schnader,
Maris & Clapp,* for Power Building and Loan Associa-
tion.

O<small>PINION</small> <small>BY</small> K<small>ELLER</small>, J., March 13, 1935:

On December 29, 1921, Edgar B. Hall, who was the
owner of twenty shares of stock in Auto Building &
Loan Association, hereinafter called Auto Association,
under two different books, or certificates, for ten
shares each, maturing at different times, borrowed
$4,000 from said building and loan association, giving
his bond secured by a building and loan association
mortgage on premises No. 129 North 63d Street, Phila-
delphia, as security, and as additional security as-
signed to the association, as collateral, his twenty
shares of stock aforesaid. One certificate for ten
shares matured of the value of $2,000, which was
credited by the association on the principal of the
mortgage.

On June 24, 1932, alleging a default in the payment of dues, interest and premiums for six months and more, Auto Association entered judgment on the bond against Edgar B. Hall, to No. 4239 June Term 1932 in the Court of Common Pleas No. 1 of Philadelphia County, and on July 1, 1932 the damages were assessed at $2,525.97. No appropriation was then made or has been made since by Auto Association of the value of the stock assigned to it as collateral security for the loan as aforesaid.

On April 6, 1927, Edgar B. Hall delivered to the St. Thomas Catholic Temperance Building and Loan Association his bond and warrant in the sum of $2,000, secured by a second mortgage on said premises No. 129 North 63d Street, and by an assignment of ten shares of stock in said St. Thomas Association as additional collateral security. This bond and mortgage and the accompanying collateral security were duly assigned to Power Building & Loan Association, hereinafter called Power Association. On March 1, 1934 judgment was entered on this bond against Edgar B. Hall to No. 9800 December Term 1933 in the Court of Common Pleas No. 1, and damages thereafter assessed at $2,547.49. A fieri facias was issued on this judgment and the mortgaged premises were on April 2, 1934 sold by the sheriff to Power Association for $50,—subject to the first mortgage of Auto Association. The sheriff's deed was executed and acknowledged on April 9, 1934 and was recorded on April 20, 1934. The advertisement of said sheriff's sale announced that the premises would be sold ''subject to mortgage of $2,360.''

In the meantime, on March 29, 1934, Edith B. Derkin, who was the sister of Edgar B. Hall, and who had from time to time, since July, 1932, advanced him money to pay his building and loan dues, interest and premiums to Auto Association, as well as on other ac-

counts, sent to the secretary of Auto Association a written assignment, dated March 1, 1934, by Edgar B. Hall to her of his ten shares of stock in Auto Association, represented by book No. 757, 20th series—being the ten shares held by Auto Association as additional collateral security—, expressly recognizing that this assignment was subject to the prior assignment to Auto Association as collateral security for its bond and mortgage. The secretary of Auto Association, on April 3, 1934, returned this assignment in a letter to Mrs. Derkin's attorney, with the request that "the enclosed power be executed in its place." He desired an assignment which appointed himself, as secretary of the association, attorney to make the transfer, instead of a straight assignment as the first paper was. By a mistake, which he admitted, he named as the transferee, 'Edith B. Hall,' which was Mrs. Derkin's maiden name, and in designating the stock to be assigned, he wrote 'Book 757 for 10 shares of 20 series of stock of Good Investment Building & Loan Association,' an association of which he was also secretary. His letter of April 3, 1934 is, however, proof positive that the association had notice of the assignment to Mrs. Derkin on March 29th. That the assignment did not comply with the provisions of the by-laws, as to being signed in the secretary's presence, is, in this appeal, of no moment. The secretary of Auto Association did not object to it on that ground; and in this contest between Mrs. Derkin and a third party, it must be recognized as valid. "The by-law relating to assignment and transfer of stock is a regulation among stockholders and is not applicable here": Citizen's National Bank v. Irvin B. & L. Assn., 316 Pa. 536, 175 A. 399. See also, Brauner v. Corgan, 316 Pa. 196, 173 A. 397. The second assignment, as prepared by the secretary of Auto Association, was, however, signed by Edgar B. Hall and received by the association on

April 5, 1934. On April 17, 1933 Mrs. Derkin paid Auto Association $336, which represented the arrearages due on its mortgage loan, including dues, interest and premiums. This was done by applying $336 out of $450, which Auto Association owed her on other stock, which had matured. Between April 5, 1934 and the next meeting of Auto Association, April 16, 1934, Mrs. Derkin, through her attorney requested Auto Association to assign to her the said judgment and the mortgage accompanying it, which it held on said premises No. 129 North 63rd Street, and tendered Auto Association her check for the sum of $363, being the difference between the amount owing on the loan and the value of the stock as reported by officers of said association. The association refused to do so, but raised no question as to the sufficiency of the tender. Whereupon, on April 26, 1934, Mrs. Derkin filed her petition in court, on which a rule was granted on Auto Association, to show cause why Auto Association, the plaintiff in said judgment, should not have the judgment marked to the use of Edith B. Derkin and assignment made to her of the collateral security, to wit, the mortgage as aforesaid, on deposit of the sum of $363 with the prothonotary of the court. Power Association was permitted to intervene and both it and Auto Association filed answers. A hearing was had and testimony taken. The lower court, on May 12, 1934, discharged the rule, but found as a fact that Mrs. Derkin gave consideration for the assignment of the stock by Hall, and that there was no evidence of fraud in connection with the assignment. On May 3, 1934, while the rule was still pending and before the hearing had been held, Power Association issued an attachment execution on its judgment to 9800 December Term, 1933, (Common Pleas No. 1), and summoned Auto Association as garnishee. The learned president judge of the court be-

low, in his opinion, refers to this attachment. It amounts to nothing, for it is subject to the prior assignment in favor of Mrs. Derkin. This is ruled by Phillips' Est. (No. 4), 205 Pa. 525, 531, 55 A. 216, where it was held that the assignee of a chose in action, even though he has given no notice of his assignment to the holder of the fund, has priority over an attachment issued and *served* (Baldwin's App., 86 Pa. 483) subsequent to such assignment. Still more so is this the case where, as here, the assignee gave notice of the assignment to the holder of the fund before the issuance and service of the attachment. "As to [the assignor] the prior assignments, with or without notice to the accountants, were valid, and so they were against his attaching creditors, whose rights rose no higher than his: Pellman v. Hart, 1 Pa. 263; Noble v. Thompson Oil Co., 79 Pa. 354; Hemphill v. Yerkes, 132 Pa. 545" '(Phillips' Est., supra, p. 531). Mrs. Derkin has appealed.

The by-laws of Auto Association provide: "Shares on which loans have been made upon real estate security may be transferred subject to the rights of the association" (Art. IV, sec. 6).

This is really a contest between the appellant, Mrs. Derkin, and Power Association. The only interest of Auto Association, as expressed in its paper book filed in this court, is that it may receive the money due it on its bond and mortgage and be protected against any adverse claims by either of the other parties. It specifically "submits itself to whatever order the court sees fit to make and indicates its willingness to comply with such order, provided, that if it is to assign or satisfy the mortgage and/or judgment, it be paid $363, together with proper costs of assignment or satisfaction. The controversy in the present case is entirely between Edith B. Derkin and the Power Building & Loan Association, and it is, therefore, suggested to the

court that costs incident to the case should not be assessed against the Auto Building & Loan Association." As before stated, Auto Association has never appropriated the value of the stock formerly held by Edgar B. Hall and now owned by Mrs. Derkin to the payment of its bond and mortgage.

The principles which govern in the marshalling of assets or in subrogation are those of equity. "The doctrine of subrogation is of purely equitable origin; its application is always controlled for the promotion of justice; it will never be enforced, therefore, to defeat a superior or even an equal equity in another": Robeson's App., 117 Pa. 628, 633, 12 A. 51. But it should be enforced where a failure to do so will result in injury or injustice to one having a superior right. And in this State, where equity is administered under common law forms, it may be done by petition and rule to show cause in the pending judgment at law (Steele's App., 72 Pa. 101, 103; Com. to Use v. Nolt, 63 Pa. Superior Ct. 332), and needs not a formal bill in equity with a decree directed to the law side of the court, such as is necessary when judgment has not been entered on the bond. See Erthal v. Glueck, 10 Pa. Superior Ct. 402.

Strictly speaking, Power Association has little, if any, equity that merits consideration. It purchased Hall's real estate at sheriff's sale on an execution issued by itself, subject to Auto Association's first mortgage of $2,000 and interest, amounting at the time of sale to $2,360. It is well settled that it had no legal or equitable right to demand or require that the value of Hall's stock should be applied to the reduction of Auto Association's bond and mortgage. A host of decisions of the Supreme Court and of this court establish this statement of the law. It is not necessary to refer to all of them. The following will suffice: Link v. Germantown Bldg. Assn., 89 Pa. 15, 19; Economy Bldg.

Assn. v. Hungerbuehler, 93 Pa. 258, 264; Spring Garden Assn. v. Tradesmen's Loan Assn., 46 Pa. 493, 495; Harris' Appeal, 2 Sadler 203, 3 A. 776; Kreamer v. Springfield Saving Fund & Loan Assn., 6 W. N. C. 267; Erthal v. Glueck, 10 Pa. Superior Ct. 402, (cited with approval of Supreme Court in Kurtz v. Campbell, 218 Pa. 524, 525, 67 A. 843); Ramstein v. Handel & Haydn B. & L. Assn., 65 Pa. Superior Ct. 190; Selikowitz v. Merchants B. & L. Assn., 103 Pa. Superior Ct. 453, 455, 157 A. 337, (allocatur refused by Supreme Court, 103 Pa. Superior Ct. p. XXV). Had Auto Association, before settlement by the sheriff, following the sale of the real estate on Power Association's judgment, appropriated the value of Hall's stock to its judgment and mortgage, the situation would have been different: Bartram B. & L. Assn. v. Nolen, 300 Pa. 417, 150 A. 628; Johnson v. Sharon Bldg. Assn., 16 Pa. Superior Ct. 311; Wadlinger v. Washington German B. & L. Assn., 153 Pa. 622, 26 A. 647; and the appropriation would have inured to the benefit of Power Association; not because Power Association had any equities to be enforced, but because Auto Association having two securities, one real and one personal, with no priority as between themselves, could elect from which it would seek priority of payment: Hampton v. Congress B. & L. Assn., 300 Pa. 501, 150 A. 895; Landberg v. Equitable Investment Co., 292 Pa. 476, 141 A. 302. But Auto Association having failed to appropriate the value of the stock to its judgment and mortgage before the settlement by the sheriff on the sale of the real estate to Power Association, (Hamilton Trust Co. v. Hoskins, 244 Pa. 1, 90 A. 541), and that sale having been made subject to Auto Association's first mortgage, and the rights of a bona fide purchaser of the stock having intervened, who not only gave a valuable consideration for the stock, (Act of May 21, 1921, P. L. 1045, Sec. 31b); Shibler v. Hart-

ley, 201 Pa. 286, 50 A. 950; Reicher v. Selker, 115 Pa. Superior Ct. 424, 175 A. 734, but has paid Auto Association $336, which was accepted by it as payment of arrearages due on its mortgage loan, the respective rights and priorities or posteriorities of the appellant, Mrs. Derkin, as owner of the stock, and of Power Association, as owner of the real estate, have become fixed as of the date of settlement with the sheriff—that is, the date of delivery of the sheriff's deed—, and while Auto Association could still appropriate the appellant's stock to payment of its judgment and mortgage, under its prior right by assignment as collateral security, it could not disturb or affect the equities of the appellant, and the latter would be entitled to be subrogated to Auto Association's judgment and mortgage security, in so far as they exceeded the balance due Auto Association, up to the extent of the value of her stock. For example, if Auto Association should now foreclose its mortgage or issue execution on its judgment, it could demand from the proceeds of sale of the real estate, the full amount of the judgment and mortgage, and Power Association could not require any appropriation or application on said judgment or mortgage of the value of Mrs. Derkin's stock. On the other hand, since the sheriff's sale of Hall's real estate and the delivery and recording of the sheriff's deed to Power Association, which fixed the relative rights of the two junior security holders, if Auto Association should now appropriate the value of Mrs. Derkin's stock to its loan and foreclose its mortgage, or issue execution on its judgment, for the balance, on a distribution of the proceeds of sale, Auto Association would be entitled to be first paid the balance due it on its judgment and mortgage; next, Mrs. Derkin, as owner of the stock which had been appropriated and applied to the first lien on Power Association's real estate, would be

subrogated to the rights of Auto Association in said judgment and mortgage, up to the value of her stock; and any balance remaining would be paid to Power Association as the owner of the land subject to the judgment and mortgage.

The course contended for by this appellant preserves to all parties their respective rights as they existed when Power Association become the owner of the real estate subject to Auto Association's mortgage. (1) Auto Association would receive full payment of its loan as represented by its judgment and accompanying mortgage, free of costs, which is all it has a right to ask. (2) Mrs. Derkin would receive the value of her stock subject to the rights of the prior assignee, Auto Association, as above stated. (3) Power Association would hold the real estate subject to the mortgage lien with which it was encumbered when it purchased it and subject to which it became the owner of the property; it would not be obliged to pay one cent more for the real estate than it, in effect, agreed to pay when it purchased it at sheriff's sale and received the deed therefor. Had Edgar B. Hall conveyed the real estate to Power Association under and subject to the first mortgage it would have been obliged to repay to Hall any money which he was obliged to pay Auto Association on account of the principal of its first mortgage, notwithstanding the Act of June 12, 1878, P. L. 205; Green v. Allegheny Bldg. Assn., 311 Pa. 305, 310, 166 A. 865. Having become the purchaser at sheriff's sale, subject to the mortgage, the same rule does not apply, but where land is sold, even at sheriff's sale, subject to a mortgage, it, that is, the land, becomes the primary fund to pay the mortgage debt: Link v. Germantown Bldg. Assn., supra, p. 20; Hansell v. Lutz, 20 Pa. 284. Of course, the mortgage debt thus referred to is only the amount actually due, (Link v. Germantown Bldg. Assn., supra), but when the dues paid in have not been

appropriated to the principal of the mortgage, as is admittedly the case here—the mortgage debt, subject to which the sale is made, represents the face of the mortgage—in this case $2,000. One lending money on second mortgage, following a building and loan association first mortgage, can always protect himself by requiring as additional security a collateral assignment of the building and loan stock, subject to the prior assignment to the building and loan association which holds the first mortgage.

If the position taken by Power Association and approved by the court below should prevail, the rights and equities of the appellant, Mrs. Derkin, as they existed when the sheriff conveyed the real estate to Power Association, would be greatly reduced, while those of Power Association would be correspondingly increased. Between $1,600 and $1,700 of the value of Mrs. Derkin's stock would be used to pay a mortgage on real estate which had been conveyed to Power Association subject to its lien; and on the other hand Power Association would obtain the real estate for $1,600 to $1,700 less than it, in effect, agreed to pay; that is, it would be permitted to apply $1,600 to $1,700 of Mrs. Derkin's money for its benefit to the relief of the land owned by it, which land was the primary fund for the payment of the mortgage.

The learned president judge of the court below frankly admitted that his disposition of the rule seemed, "at first blush," to be in conflict with some of the cases cited above, to wit, Selikowitz v. Merchants B. & L. Assn., 103 Pa. Superior Ct. 453, 157 A. 337; Economy B. & L. Assn. v. Hungerbuehler, 93 Pa. 258; and Spring Garden Assn. v. Tradesmen's Loan Assn., 46 Pa. 493; but he concluded that they were in conflict with Robeson's App., 117 Pa. 628, 12 A. 51, and as the first case just abovementioned was only a decision of this court, and the two Supreme Court cases were of

earlier date, they were overruled by Robeson's Appeal. We have already pointed out that an appeal was refused by the Supreme Court in the Selikowitz case, and while this does not mean that the judgment in that case has been affirmed by the Supreme Court it does show that it gave the matter some consideration. As to the two Supreme Court cases, they have been cited by the Supreme Court with approval, and as declaratory of the law in building and loan association cases, long after Robeson's Appeal was decided. See Sullivan Mfg. Co. v. Ideal B. & L. Assn., 313 Pa. 407, 411, 170 A. 263; Green v. Allegheny Bldg. Assn., 311 Pa. 305, 307, 166 A. 865; Hamilton Trust Co. v. Hoskins, 244 Pa. 1, 4, 90 A. 541; Orient B. & L. Assn. v. Freud, 298 Pa. 431, 436, 148 A. 841; Kurtz v. Campbell, 218 Pa. 524, 525, 67 A. 843; Freemansburg B. & L. Assn. v. Watts, 199 Pa. 221, 223, 48 A. 1075. All of these cases hold, without exception, that payments on building and loan association dues or stock are not ipso facto a partial discharge of the mortgage debt; that in order to effectuate application of payments on stock to the debt it requires an act of appropriation by either the mortgagee association or the borrowing stockholder; and that no other creditor of the stockholder can either make the appropriation or require it to be made. In fact, in Hamilton Trust Co. v. Hoskins, 244 Pa. 1, 90 A. 541, where the building association entered judgment on its bond, assessing damages at the *full principal of the loan,* and sold the real estate at sheriff's sale for a sum sufficient to satisfy the mortgage, and *after settlement by the purchaser* (p. 3)—differing from Bartram B. & L. Assn. v. Nolen, supra, pp. 421, 422—a judgment creditor attached the stock in the hands of the building association, and the latter then attempted to appropriate the defendant's stock to the payment of the mortgage debt, to the relief of the second mortgage, it was held that the appropriation was

too late and that the judgment creditor was entitled to the value of the stock attached.

But the main error of the court below was in overlooking the distinction between Robeson's Appeal and the present case on the facts. Robeson's Appeal had to do with liens on two different tracts of land, owned by a man named Graham. The Hale tract, which was bought in 1864 was subject to a purchase money mortgage followed by Woods' judgments and Robeson's mortgages. In 1875 Graham bought the Decatur tract and when Woods revived his judgments they became a first lien on the Decatur tract. Myers subsequently took a mortgage on the Decatur tract. Both tracts of land were sold at sheriff's sale at the same time on executions which discharged all liens. When Myers took his mortgage on the Decatur tract he could see from the record that Woods' judgments were liens on both tracts and should have known that Robeson, whose lien covered only the Hale tract, could require Woods, whose liens covered both tracts, to have recourse first to the Decatur tract, to the benefit of Robeson, rather than Myers. As the court said, speaking through Mr. Justice CLARK: "The appellants [Robesons] acquired against Graham, the mortgagor, the right to have his other lands, not included in the mortgage, applied first to the payment of the earlier judgments which were liens against them. This right it was not in the power of the mortgagor to defeat by confessing judgments to other creditors or by contracting subsequent debts." But this rule, which is applicable to liens on different tracts of real estate belonging to the same debtor — liens which need no act of appropriation by the creditor to make them effective — does not apply to building and loan association stock held as collateral security, as to which the law is settled that an appropriation must be made before it can be applied as payment on the loan. Be-

sides, personal property which is pledged as security for one loan cannot be held even by the pledgee as security for a later loan, without an agreement to that effect: Appeal of Penna. Co., 18 W. N. C. 469. See also Herr v. Lancaster Trust Co., 237 Pa. 344, 85 A. 443; Phila. Mercantile Loan Assn. v. Moore, 47 Pa. 233. In Harris' App., supra, the fullest report of which is given in 2 Sadler 203, 207, the distinction between liens on real estate and building association stock assigned as collateral, was recognized in the report of the auditor, which was approved by the lower court and the Supreme Court. See, also, discussion by Judge ALLISON, approved by the Supreme Court in Link v. Germantown Bldg. Assn., 89 Pa. 15, and by Judge BUTLER, afterwards United States District Judge, in Kreamer v. Springfield Saving Fund and Loan Assn., 6 W. N. C. 267, also approved by the Supreme Court. We cannot believe that the Supreme Court intended in Robeson's Appeal, which was concerned only with liens on two tracts of real estate and had no relation to building and loan associations and their stock, to change the well established law relative to the appropriation of stock in building and loan associations held as collateral security, as it existed for many years. We are confirmed in this position by the fact that the Supreme Court, as late as 1934, has adhered to these decisions and cited them with approval.

The appellant here is not a meddler nor mere volunteer. The stock assigned by Hall to Mrs. Derkin may be said to be a 'real surety' for the debt due to Auto Association. See Zusin v. Wharton Business Men's B. and L. Assn., 107 Pa. Superior Ct. 181, 188, 163 A. 377. As the owner of the stock Mrs. Derkin has the rights of a surety, and as such, since there are no superior or countervailing equal equities in others, and the mortgaged premises have been sold at sheriff's sale to a non-shareholding buyer, she has the

right to pay the original debt or obligation to Auto Association and require the assignment to her of the primary security held by the latter for its payment, (Zusin v. B. & L. Assn., supra, p. 188), to wit, the bond, now reduced to judgment, and its accompanying mortgage on the land, which by the sheriff's sale has become the primary fund for payment of the debt.

One other position taken by the court below needs some discussion. The learned judge was of opinion that the assignment here sought was prohibited by section 905[1] of the Building & Loan Code of 1933 (Act of May 5, 1933, P. L. 457). We are of opinion that the section relied on refers to the *voluntary* sale or transfer by a building and loan association, of a *'share mortgage'* on real estate owned by its shareholder; that the 'owner of the real property' intended to be protected, is the shareholding owner, whose rights would be seriously affected by a transfer which might have the effect of converting it into a straight mortgage, or, at least, not permit him to pay off the mortgage by the matured value of shares paid in over a number of years. So far as Power Association is concerned the mortgage is no longer a 'share mortgage.' But in any event the section cannot be invoked to prevent a court, having due regard to the equities of the case, from making an equitable order relative to the assignment of a judgment, which will do justice

---

[1] "Section 905. Limitation Upon Disposal of Mortgages. Except as otherwise specifically provided in this act, an association which is not in the possession of a liquidating trustee or liquidating trustees, pursuant to a plan of voluntary dissolution, shall not, except with the written consent of the owner of the real property upon which a share mortgage is secured, sell, transfer, or assign such mortgage, and it shall not sell, transfer, or assign any mortgage or other encumbrance until every subsequent mortgage or encumbrance owned by it upon such real property shall have been paid in full. The corporation or person to whom such transfer, sale, or assignment is made shall not have the power to charge fines or premiums, unless such corporation is a building and loan association."

and preserve the rights of the parties, merely because the bond, on which the judgment was obtained, is also secured by a mortgage on real estate.

The assignment of error is sustained. The order is reversed, and the record is remitted to the court below with directions to enter an order in accordance with this opinion, requiring Auto Building & Loan Association, upon the receipt by it from Edith B. Derkin of such sum of money, as together with the value of the ten shares of stock of the 20th series, (Book 757) originally issued to Edgar B. Hall, but now owned by Edith B. Derkin, will fully pay and satisfy the loan or indebtedness of Edgar B. Hall to said association, together with all costs and assignment charges, to assign, transfer and set over to the said Edith B. Derkin the judgment to No. 4239 June Term 1932, Common Pleas No. 1 of Philadelphia County and the mortgage accompanying the bond, on which judgment was entered, to wit, mortgage for $4,000, reduced to $2,000, covering premises 129 North 63d Street, Philadelphia, dated December 29, 1921, recorded in Mortgage Book J. M. H. 2247, p. 267.

Costs on this appeal to be paid by intervening appellee, Power Building & Loan Association.